[No. 20869. In Bank. — March 22, 1892.]

THE PEOPLE, RESPONDENT v. A. O. GOSSET, APPELLANT.

| 93 | 641 |
| 108 | 443 |
| 93 | 641 |
| 111 | 252 |
| 93 | 641 |
| 113 | 179 |
| 93 | 641 |
| 118 | 411 |

CRIMINAL LAW — PLEADING — INDICTMENT — SERIES OF ACTS CONSTITUTING ONE OFFENSE — SINGLE COUNT. — When a statute enumerates a series of acts, either of which, separately or all together, may constitute an offense, all of such acts may be charged in a single count of the indictment.

ID. — GAME OF FARO — INDICTMENT — CHARGE OF ONE OFFENSE. — An indictment charging that a defendant "did deal, play, carry on, and conduct" a game of faro charges but one offense.

ID. — NUMBER OF CARDS PLAYED — INSTRUCTION. — Upon the trial of a defendant charged with dealing and playing the game of faro, the refusal of the court to instruct the jury, at the defendant's request, that "faro is a game played with a full deck of fifty-two cards" is not error, especially where there is no evidence that the game alleged to have been conducted by the defendant was played with less than fifty-two cards.

ID. — PLAYING PROHIBITED GAME WITH LESS CARDS THAN USUAL. — When a prohibited game is played in all other respects in the usual way, and according to its established rules, the fact that a game is played with one or two cards less than the number usually employed does not take it out of the prohibition.

XCIII. CAL.—41

ID. — REASONABLE DOUBT — ERRONEOUS INSTRUCTION — INCOMPATIBILITY
OF INCULPATORY FACTS WITH INNOCENCE. — In order to convict a defend-
ant charged with crime, the facts proven must not only be consistent
with the hypothesis of his guilt, but inconsistent with any reasonable
hypothesis of his innocence; and an instruction to the jury upon the
subject of reasonable doubt, after telling the jury that a mere prepon-
derance of evidence was not sufficient, that "on the other hand it is not
required that the inculpatory facts shall be incompatible with the inno-
cence of the accused," is erroneous.

ID. — NATURE OF GAME OF CARDS — HEARSAY EVIDENCE. — Upon the trial
of a defendant charged with dealing and playing the game of faro, where
a witness for the prosecution, after having testified that he saw the de-
fendant dealing a game of cards, testified, under an objection of the
defendant, that "he was playing faro," and on cross-examination testi-
fied that at the time he saw the defendant playing he did not know
what the game was, and that the only knowledge which he afterwards
acquired on the subject had been gained from what a man told him, a
motion by the defendant to strike out his testimony as to what game
was being played, upon the ground that it was hearsay, should have been
granted.

ID. — PROOF OF GAME OF FARO — KNOWLEDGE OF WITNESS — CROSS-EXAMI-
NATION. — If a witness, of his own knowledge, knows what faro is, and
.saw a defendant dealing or conducting it, he may testify to the fact that
he saw the defendant dealing faro, leaving his knowledge on the subject
to be tested by cross-examination; and if he does not know what faro is,
he may testify as to the acts which he saw the defendant doing.

ID. — EXPERT EVIDENCE — DESCRIPTION OF GAME — PROVINCE OF COURT AND
JURY. — It is not admissible to allow one witness to testify that the acts
testified to by another witness constituted the dealing or playing of
faro, nor can a witness be called for the sole purpose of defining or de-
scribing faro. It is for the court to instruct the jury as to what con-
stitutes the game charged to have been played, and for the jury to
determine whether the game played was the one charged or not.

ID. — BOOK AS EVIDENCE — USE OF DIAGRAM. — Although the book called
"Modern Pocket Hoyle" is inadmissible as evidence, in itself, of what
constitutes the game of faro, yet it was not error for a witness to use a
page of the book containing a pictorial representation of faro as a dia-
gram to illustrate his testimony.

ID. — BANKING GAME — INDICTMENT. — Dealing or conducting the game of
faro is an offense under the code, whether a banking game or not, and
an averment in an indictment for dealing and conducting such game
that it is a "banking game" is unnecessary.

APPEAL from a judgment of the Superior Court of
Tulare County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*L. V. Hitchcock*, for Appellant.

*Attorney-General Hart*, and *Deputy Attorney-General
Layson*, for Respondent.

McFarland, J. — Appellant was convicted of dealing, playing, etc., the game of faro, and appeals from the judgment, and from an order denying a new trial.

1. We do not think that the indictment charges more than one offense because it uses the words "did deal, play, carry on, and conduct" the said game. "Where a statute enumerates a series of acts, either of which, separately or altogether, may constitute the offense, all of such acts may be charged in a single count, for the reason that, notwithstanding each act may, by itself, constitute the offense, all of them together do no more, and likewise constitute but one and the same offense." (*People* v. *Harrold*, 84 Cal. 567; *People* v. *Frank*, 28 Cal. 513; *Ex parte McCarthy*, 72 Cal. 384.)

2. There was no error, under the circumstances of this case, in the refusal of the court to instruct the jury, at appellant's request, that "faro is a game played with a full deck of fifty-two cards." In the first place, there was no evidence that the game alleged to have been conducted by appellant was played with less than fifty-two cards; and therefore there was nothing in the case upon which to base the instruction; and in the second place, when a prohibited game is played in all other respects in the usual way, and according to its established rules, the purpose of the law cannot be thwarted by the simple devise of playing it with one or two cards less than the number usually employed. Otherwise no statute against a particular game would be of any value.

3. We see no objection to the instructions of the court to the jury except on the subject of reasonable doubt. The charge on that subject was generally correct and sufficient, because it employed language that has been repeatedly approved; but in one part of it the court, after telling the jury that a mere preponderance of evidence was not sufficient, said: "And on the other hand, it is not required that the inculpatory facts shall be incompatible with the innocence of the accused." This was clearly erroneous. If the facts proven were compatible with the appellant's innocence, he should have been ac-

quitted.  It is a recognized principle of English and American law, that in order to convict a defendant the facts proven must not only be consistent with the hypothesis of his guilt, but inconsistent with any reasonable hypothesis of his innocence.  The only shadow of authority for the language used in the instruction which has been called to our attention is to be found in *People* v. *Murray*, 41 Cal. 66.  In that case no such instruction had been *given;* but a very extreme instruction on the subject had been asked by the defendant and had been refused, and the refusal was held not to have been erroneous.  The instruction asked included the words " absolutely incompatible "; and the court seemed to think that these words " require proof of his guilt beyond the possibility of a doubt."  The court says, however, in its opinion, that " the law requires that the facts shall not only be consistent with the guilt of the accused, but inconsistent with any other rational conclusion "; and it is difficult to see the difference between that language and the instruction asked by the defendant in that case, unless we view the court as attaching large significance to the word " absolutely."  The opinion refers approvingly to *People* v. *Cronin*, 34 Cal. 201, and *People* v. *Dick*, 32 Cal. 215; but in the Cronin case only the general rule is expressed, that the evidence must be " not only consistent with the guilt of the appellant, but inconsistent with any other rational conclusion "; and in the Dick case the judgment was reversed because the trial court had refused to give instructions the exact opposite of the one given in the case at bar.  With respect to instructions on this subject there is no substantial difference between " incompatible " and " inconsistent."

4. Stevenson, a witness for the prosecution, after having testified that he saw the defendant dealing a game of cards, was asked by the district attorney, " What game was that ? "  Defendant's counsel asked that he be instructed not to answer unless he knew the game played, and the court denied the request.  He was then asked, " If, at *this* time, you know what game the defendant was

*then* dealing"; and the defendant's objection having been overruled and an exception taken, the witness answered, "He was playing faro." On the cross-examination the witness testified that at the time he saw the defendant playing he did not know what the game was, and that the only knowledge which he afterwards acquired on the subject had been gained from what a man told him. Thereupon appellant moved to strike out his testimony "upon the point of what game was being played, upon the ground that it was hearsay." The motion was denied and appellant excepted. We think that the court erred in denying the motion. It appeared further that the witness had never seen faro played before the occasion referred to, and had never played it since. Leaving other considerations out of the question for the present, the testimony was pure hearsay; and there was nothing to make it an exception to the rule that hearsay testimony is not admissible. As the case, however, may be tried again, it is necessary to say something more as to the character of evidence admissible in this class of cases.

We think that if a witness, of his own knowledge, knows what faro is, and saw a defendant dealing or conducting it, he may testify to the fact that he saw the defendant · dealing faro, leaving his knowledge on the subject to be tested by cross-examination. And if he does not know what faro is, he may testify as to the acts which he saw defendant doing. But it is not admissible to allow one witness to testify that the acts testified to by another witness constituted the dealing or playing of faro. Nor can a witness be called for the sole purpose of defining or describing faro. If the jury are to be instructed as to what constitutes the crime charged, the instruction must come from the court. Of course, when a witness testifies that he saw a defendant playing faro, upon cross-examination his notion as to what faro is may be incidentally drawn out; but it is for the court to instruct the jury what constitutes the game charged to have been conducted. In *People* v. *Carroll*, 80 Cal. 154,

the latest authority upon the subject, this court says: " We do not concur in the view, however, that one witness can describe the game and another can be allowed to testify that from that description the game was a banking game, *or any other*. We think a person who knows the game may testify in general terms what the game he witnessed was. If not familiar with the game, he may describe it, and the court should instruct the jury as to what constitutes the game charged to have been played or conducted, the jury to determine whether the game played was the one charged or not. To leave the question open to be proved or disproved in every case by experts would lead to great uncertainty in the administration of justice." In that case the offense charged was that of conducting a " banking game "; and although a witness had been allowed to describe a banking game, this court judicially determined that his description was correct and should have been given by the court as an instruction to the jury, and thereupon held that it "could have done the appellant no harm "; but it also held that the question was " one of law for the court."

5. Appellant's objections to the regularity of the formation of the grand jury were not sufficient basis for his motion to set aside the indictment, or to strike it from the files.

6. The book called " Modern Pocket Hoyle " was not admissible in evidence; but, as we understand it, a page of that book containing a pictorial representation of faro was merely used as a diagram by which a witness illustrated his testimony. If that was clearly the only purpose for which it was used, there was probably no error committed; but no part of the book can be used as evidence in itself of what constitutes the game of faro.

We see no other points requiring special notice. It may be remarked that the averment in the indictment that faro is a " banking game" was unnecessary. Faro, no doubt, is a banking game; but dealing or conducting it is an offense under the code, whether a banking game or not.

The judgment and order appealed from are reversed, and the cause remanded for a new trial.

DE HAVEN, J., GAROUTTE, J., HARRISON, J., PATERSON, J., and SHARPSTEIN, J., concurred.