[Crim. No. 72.   In Bank.—February 10, 1896.]

THE PEOPLE, RESPONDENT, v. W. H. THOMPSON, APPELLANT.

CRIMINAL LAW—TRAIN WRECKING—INFORMATION—DUPLICITY—THROWING OUT SWITCH—BOARDING TRAIN WITH INTENT TO ROB.—Under section 218 of the Penal Code, relating to train wrecking and the punishment thereof, an information charging a defendant with feloniously throwing out a switch with intent to derail a passenger train at a certain station, and then and there feloniously boarding a passenger train at said station, with intent then and there to rob said passenger train, does not charge two offenses, and is not subject to the charge of duplicity.

ID.—STATUTE PUNISHING EITHER OF SEVERAL ACTS—CONJUNCTIVE PLEADING—DIFFERENT INTENT NOT MATERIAL.—When a statute forbids and

makes punishable the doing of either of several acts, an indictment or
information on such a statute may allege in a single count conjunctively
that the defendant at the same time did as many of the forbidden things
as the pleader chooses, and the pleading will not be double; but the
offense will be established at the trial by proof of any one of them; and
it is immaterial that a different intent may accompany one of the acts
from that accompanying the other acts specified.

APPEAL from a judgment of the Superior Court of Los
Angeles County.    B. N. SMITH, Judge.

The facts are stated in the opinion of the court.

*Ben Goodrich, D. K. Trask,* and *Willliam A. Harris,*
for Appellant.

The legislature intended to create distinct offenses
under section 218 of the Penal Code.    An information
can only charge one offense, and this information charges
two offenses.    (*People* v. *De Coursey,* 61 Cal. 134.)    Rob-
bery is defined in another section of the code.    (Pen.
Code, sec. 211.)

*W. F. Fitzgerald, Attorney General,* and *Charles H. Jack-
son, Deputy Attorney General,* for Respondent.

The legislature has power to enact a combination of
several offenses or several facts or circumstances con-
stituting one new offense, and it is sufficient to follow
the language of the statute.    (*People* v. *Rogers,* 81 Cal.
209; *People* v. *Forney,* 81 Cal. 118; *People* v. *Keeley,* 81
Cal. 210; *People* v. *Rozelle,* 78 Cal. 89; *People* v. *Fowler,*
8; Cal. 136; *People* v. *Russell,* 81 Cal. 616; *People* v. *Mahl-
man,* 82 Cal. 585; *People* v. *Savercool,* 81 Cal. 650; *People*
v. *Naylor,* 82 Cal. 608; *People* v. *Tonielli,* 81 Cal. 275;
*People* v. *Edson,* 68 Cal. 549; *People* v. *Markham,* 64 Cal.
157; 49 Am. Rep. 700.)    A person may by a single act
endeavor to accomplish two or more criminal results;
and an indictment is not subject to duplicity in charg-
ing an intent to commit two or more offenses.    (*People*
v. *Milne,* 60 Cal. 71; Wharton's Criminal Pleading and
Practice, sec. 253; *R.* v. *Rykendike,* 1 Moody & R. 179;
Bishop's Criminal Practice, 570; *King* v. *Fuller,* 1 Bos.

& P. 180; 2 Leach's English Crown Cases, 3d ed., 916; *State* v. *Damon*, 2 Tyler, 387.)　Where a statute enumerates a series of acts either of which separately or all together may constitute the offense, such acts may be charged in a single count, and but one offense is charged thereby.　(*People* v. *Frank*, 28 Cal. 507; *People* v. *De La Guerra*, 31 Cal. 459; *People* v. *Harrold*, 84 Cal. 567; *People* v. *Gosset*, 93 Cal. 641; *People* v. *Smith*, 103 Cal. 563; *People* v. *Leyshon*, 108 Cal. 440.)

GAROUTTE, J.—A few years past the legislature enacted what is popularly known as the train-wrecking act.　It is entitled, an act to add a new section to the Penal Code of the state of California, "to be known as section 218, relating to train wrecking and the punishment thereof," and the act provides:

"Every person who shall unlawfully throw out a switch, remove a rail, or place any obstruction on any railroad in the state of California, with the intention of derailing any passenger, freight, or other train; or who shall unlawfully board any passenger train with the intention of robbing the same; or who shall unlawfully place any dynamite or other explosive material, or any other obstruction, on the track of any railroad in the state of California with the intention of blowing up or derailing any passenger, freight, or other train; or who shall unlawfully set fire to any railroad bridge or trestle, over which any passenger, freight, or other train must pass, with the intent of wrecking said train, upon conviction shall be adjudged guilty of felony, and shall be punished with death or imprisonment in the state prison for life, at the option of the jury trying the case."

Defendant Thompson was charged by information and convicted of violating certain provisions of this act, and sentenced to be hanged.　He now brings this appeal from the judgment rendered against him.　A demurrer to the information was overruled, and the reversal or affirmance of this judgment is dependent upon the legal soundness of the action of the trial court in that behalf.　The

material part of the information charged: "The said Kid Thompson, on the fifteenth day of February, A. D. 1894, at the county and state aforesaid, did willfully, unlawfully, and feloniously throw out a switch, at Roscoe station, on the railroad known as the Southern Pacific Railroad, with intent then and there to derail a passenger train; and did then and there willfully, unlawfully, and feloniously board a passenger train on said railroad, at said station, with intent then and there to rob said passenger train."

It is now insisted that the information charges two offenses, and that such duplicity compels a reversal of the judgment. The question presented for solution is not an easy one, and we will at the outset enter into a somewhat detailed analysis of the act here involved. The act is not well drawn. Upon the contrary, it is crude—entirely too crude to leave the hands of a state legislature, especially when we consider the importance of the legislation with which that body was then dealing. We cite a single instance in illustration of these remarks, and then leave the act with the present code commission, as furnishing ample material for substantial reconstruction. One clause provides that any person is guilty " who shall unlawfully board any passenger train with the intention of robbing the same." The meaning of the phrase " *unlawfully board* any passenger train," by reason of its indefiniteness and uncertainty, but serves the purpose of giving work to the lawyers and worry to the courts; but the last part of the clause, to wit: " with the intention of robbing the same" (passenger train), is worse than the first. As to what is meant by robbing a passenger train, we will not now indulge in surmise.

This act arose from the necessity of the times, and was created for the purpose of stopping train wrecking and punishing train wreckers. The act so declares its purpose in terms, and, aside from one clause thereof, such purpose is patent upon the most casual inspection of its provisions. It covers four distinct and separate

branches of the subject, to wit: 1. Every person who shall unlawfully throw out a switch, remove a rail, or place any obstruction on any railroad in the state of California, with the intention of derailing any passenger, freight, or other train; 2. Who shall unlawfully board any passenger train with the intention of robbing the same; 3. Who shall unlawfully place any dynamite or other explosive material, or other obstruction, on the track of any railroad in the state of California, with the intention of blowing up or derailing any passenger, freight, or other train; 4. Who shall unlawfully set fire to any railroad bridge or trestle, over which any passenger, freight, or other train must pass, with the intent of wrecking said train.

The whole tenor and purpose of the act is directed against train wrecking, and this is true as to subdivision 2 equally with all other subdivisions. At first glance that clause would seem to be directed toward the suppression of the crime of robbery, but the offense of robbery is only incidentally involved, and the prevention of the wrecking of the train, and the consequent and natural results following, of injury and death to the passengers, is its prime purpose. Whatever else the clause means, it imports acts of violence upon the train. It imports to a more or less degree the subjection of the employees to the robbers, the menace and duress of the employees, a loss of control of the train by them, fright upon their part, and even death. These things being so, the probabilities of destruction to the train and passengers follow nearly as necessarily as such probabilities would follow from the misplacing of a switch or the removal of a rail. Hence we say that every part and clause of the act is directed toward the suppression of train wrecking.

Does the information charge two offenses? In other words, may the prosecution charge the defendant with the four distinct acts, to wit: Throwing out a switch, with the intention of derailing a passenger train; unlawfully boarding the said passenger train, with the in-

tention of robbing the same; placing dynamite upon the track, with the intention of blowing up the said train; and setting fire to a bridge over which said train must pass, with the intent of wrecking said train. In the present case the defendant is charged with but two of these acts, and it naturally and ordinarily follows in statutes similar to this one that, if more than one of the acts may be charged, all or any number less than all may be charged.

We think this information is not susceptible to the charge of duplicity, and base our conclusion upon the general principle declared in Bishop's New Criminal Procedure, section 436: "A statute often makes punishable the doing of one thing, or another, or another, sometimes thus specifying a considerable number of things. Then, by proper and ordinary construction, a p'rson who in one transaction does all violates the statute but once and incurs only one penalty. Yet he violates it equally by doing one of the things. Therefore, the indictment on such a statute may allege in a single count that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction *and* where the statute has 'or,' and it will not be double, and it will be established at the trial by proof of any one of them." This principle of law is universally recognized as sound, and the application of it to the facts of this case presents the only point of difficulty. If persons, for the purpose of wrecking a certain passenger train, should: 1. Throw out a switch; 2. Place dynamite upon the track; 3. Burn a bridge over which the train would pass—it would not be an open question but that those acts could be properly charged in one information, and the proof of any of them support a judgment of conviction; and the reasons why the legal soundness of such a pleading is so apparent would be because the three acts charged were forbidden by the same provision of law, because they were all directed toward one certain passenger train, and because all were done for the purpose of wrecking that train, and thus done as part

of one and the same transaction. But when we come to consider clause No. 2, as to boarding a passenger train with the intention of robbing the same, we meet with more difficulty, for there the intention with which the act of boarding is done is to rob, and not to wreck. Yet, as we have already said, the intention of robbery carries with it the probable result of wrecking, and it was the wrecking and not the robbing that the act was primarily aimed to prevent. If the act had said boarding the train with the intention of wrecking it, instead of boarding it with the intention of robbing it, the entire act would have been in perfect harmony, and clearly the four specific acts could have been joined in the one charge as one offense. And we think that the mere fact that the boarding of the train is done with the specific intent of robbery, a different intent from that accompanying the other acts specified, is not sufficient to take it out of the rule we have quoted from Mr. Bishop. We hold it is not necessary that the acts coupled together should all be required by the statute to be done with the same intent, before they may be joined as one offense. This act is essentially one to prevent train wrecking. The law-making power concluded that certain acts, done with certain intents, would result in the wrecking of trains. That body in effect created a new crime known as train wrecking, and declared it a felony. While in terms it did not give such name to these acts, yet the statute taken altogether fully supports that construction; and if such be its construction we think but one result can follow, and that is the validity of the information here involved.

If the law-making power should declare that every person who unlawfully removes a rail from a railroad track, or burns a railroad bridge, or places dynamite upon the track, or turns a switch, or forces the employees of the train to leave their posts of duty, or kills the engineer, or gags and binds the conductor of the train, shall be guilty of a felony known as train wrecking, we are clear that one or two or all of these acts, if directed

toward the same train and in the same transaction, could be, and, if the facts shown justified it, should be, charged in one information as one offense. It should be so charged, for such form of information would thus limit the rascal's opportunity of escape from the clutches of the law to the smallest possible compass.

In the foregoing illustration we have a series of acts prohibited, without mention by the statute of any specific intent in the doing of any of them; yet, if committed, they would constitute a felony. It is thus observable from what we have said that a series of prohibited acts may be joined together and charged as one offense, where the statute fixes the same specific intent in the doing or all of them; and, further, that they may be joined when the statute specifies no specific intent for the doing of any of them. And there is no reason in principle why the rule should be different when some of the acts prohibited by the statute must be done with a certain specific intent, and the others with no specific intent; or where some of the acts must be done with a certain specific intent, and others with a different specific intent. The question of intent with which the prohibited acts are done does not furnish the test by which the charge of duplicity in pleading is determined. We think that the boarding of the train, if done with a different intent from the act of burning the bridge or removing a rail, does not prevent the application of the principle laid down by Mr. Bishop. The specific intent or intention mentioned in the statute is an essential and material part of the felony. It is but a part of the description of the offense. It is just as essential to make out the felony as the doing of the abstract act, and the act and intention must be joined, or there is no offense. Hence it follows that the acts of themselves may be perfectly harmless, or they may constitute other offenses, but they are only enjoined by this statute when coupled with certain specific intents. As illustrative of this matter of intention: In *Angel* v. *Commonwealth*, 1 Va. Cas. 231, defendant was charged under a statute with unlaw-

fully shooting, "with the intention to maim, disfigure, disable, and kill," and a conviction was sustained.

As supporting generally the information here under consideration against the charge of duplicity, we cite *Hinkle* v. *Commonwealth,* 4 Dana, 519. Defendant was there charged under a statute with having "set up and kept a gaming table and induced others to bet at it." The court said: "Although the setting up of a gaming table may alone be an indictable offense, the keeping of such table and the inducing of any person to bet upon it, another, when each shall have been committed by different persons or at different times; nevertheless, as they are co-operative acts, constituting altogether one offense when committed by the same person at the same time, an indictment for that combined act in violation of law may properly charge the whole in one count, and but one punishment can be inflicted as for one offense." In *Commonwealth* v. *Miller,* 107 Pa. St. 276, an indictment was sustained charging a forcible entry and detainer. In *State* v. *Murphy,* 47 Mo. 274, an indictment was sustained charging "the keeping open a tippling shop and grocery, and selling to divers persons intoxicating liquors on the first day of the week." The court said: "When the statute in one clause forbids several things, or creates several offenses in the alternative, which are not repugnant in their nature or penalty, the clause is treated in pleadings as though it created but one offense; and they may all be united conjunctively in one count, and the count is sustained by proof of one of the offenses charged." In *State* v. *Cooster,* 10 Iowa, 454, an indictment was sustained charging the defendant with keeping a gambling house, and permitting other persons in a place under the control of defendant to play for money and other things. The court said: "The objection has its origin in the idea that there is such a difference in the essential qualities of these two acts as to make them separate offenses. But is this true? They are found in the disjunctive clause of the same section of the code,

visited with the same penalty, and it is the better opin-
ion that in their essence they are one and the same
offense, the guilt of which may be incurred in one or
the other of these methods." In *State* v. *Nelson*, 29
Me. 329, an indictment was sustained charging defend-
ant " with buying, receiving, and aiding in concealing
stolen goods, knowing the same to have been stolen."
To the same effect is *Stevens* v. *Commonwealth*, 6 Met.
241, where the court said: "There is but one count in
which the defendant is charged, and there is but one
offense with which he is charged. It is made but one
offense by the statute, although according to the lan-
guage used it may be committed in one of three modes;
that is, by buying, receiving, or aiding in the conceal-
ment of stolen goods. Whether charged to be done in
one, two, or all three of the modes mentioned, it is still
but one offense, and the general finding of the jury is
that the offense was committed as charged." In *Win-
gard* v. *State*, 13 Ga. 396, an indictment was sustained
charging that certain defendants " did play and bet with
cards for money at a game of poker, whist, faro, seven-
up, three-up and other games played with cards." It
will be noticed that in the cases we have cited the
various acts are charged in one and the same count of
the indictment.

The authorities of our own state go to the full lengths
of those cited from sister states. In *People* v. *De La
Guerra*, 31 Cal. 459, a case involving a statute which
declared it a felony for certain county officers to issue,
have in their possession with intent to circulate, or put
in circulation certain licenses, it was charged that the
defendant had in his possession, with intent to circulate,
and did actually put in circulation, one of these licenses.
The court upheld the indictment against the charge of
duplicity, and reversed the judgment. Here one of the
acts was done with a certain specific intent, and the
other was done without any specific intent whatever.
Various violations of the gaming statute may be charged

in one indictment. (*People* v. *Gosset*, 93 Cal. 641.) It is conceded that under the act declaring who are vagrants, and prescribing the punishment therefor, the entire series of acts there laid down may be charged in one complaint. (*Ex parte McCarthy*, 72 Cal. 384.) This is so though the act mentions no such offense as vagrancy; and it might be suggested that in nearly all of the statutes from which we have quoted, like the case at bar, the offense is given no technical name. In *People* v. *Frank*, 28 Cal. 513, the defendant was charged with falsely making a draft, and also with passing the draft knowing it to be forged, and the indictment was sustained. Such an indictment would be good, even though the false making was done upon one day and the passing was done months subsequent thereto; and even though the false making was done with intent to defraud A, and the passing was done with intent to defraud B. (*People* v. *Harrold*, 84 Cal. 567.)

The information in this case is clumsily drawn in this, that it is not directly and specifically shown that it was the same passenger train toward which the two unlawful acts charged against defendant were directed. But we think such fact fairly inferable from the pleading, and the entire record indicates the case to have been tried upon such assumption. Indeed, appellant's counsel make no point that the information is defective in this respect. The further point is made that there can be no such thing as robbing a passenger train, and that the statute in that regard is meaningless. "Robbing a store," "robbing a safe," and "robbing a train" are every-day, ordinary, and common expressions. Very possibly it is in this sense that the legislature used the verb "rob" and not in connection with the technical meaning of the offense of robbery. But aside from this the trial court told the jury what constituted robbing a train, and no complaint is here made that such instruction as to the law was not sound.

For the foregoing reasons the judgment is affirmed.

McFARLAND, J., VAN FLEET, J., and HARRISON, J., concurred.

TEMPLE, J., dissenting.—I dissent from the conclusion reached by the court in this case.

The charging part of the information is that defendant " did willfully, unlawfully and feloniously throw out a switch at Roscoe station . . . . with intent then and there to derail a passenger train, and did then and there willfully, unlawfully, and feloniously board a passenger train on said railroad at said station with intent then and there to rob said passenger train."

Defendant demurred on several grounds, one of which was that the information charges more than one offense, to wit: Throwing out a switch with intent to derail a passenger train; and 2. Boarding a passenger train with intent to rob the same.

Both these acts are charged in the information, and except by the use of the words " then and there" it is not shown that the two acts have any reference to each other. It does not appear that any train was derailed, or, that if so, it was derailed that defendant might board it, nor that he boarded it that he might derail it; nor is it charged that the acts were in pursuance of a common intent—as to wreck the train. In fact it does not appear that he boarded the same train that he attempted to derail. In no way is it shown that the acts charged were a part of the same transaction.

To derail a train may be one mode of wrecking a train, but to board a train for the purpose of robbing it cannot in the nature of things be either a mode or the means of wrecking it. Besides, the allegations of an information must be such that, if true, the guilt of the defendant inevitably follows. It must negative the possibility of innocence. That the defendant is guilty of any act which would tend to the wrecking of a train is not shown, for he is charged to have boarded the train for the purpose of robbing it while it was standing at a station or sidetracked waiting for its right of way, and

when no engine was attached to it. If it was intended to charge an act which was liable to cause the wrecking of the train, all such possibilities should be negatived.

As long ago as 1865 this court considered the question as to what charges may be joined in an indictment. In *People* v. *Shotwell,* 27 Cal. 394, it was said, quoting from Wharton: "Where a statute makes two or more distinct acts connected with the same transaction indictable, each one of which may be considered as representing a stage in the offense, it has in many cases been ruled that they may be coupled in one count."

It has been held that where an offense consists of various acts which may be said to constitute different phases or ingredients of an offense, or, as is said in the above quotation, different stages in its commission, the legislature may provide that the commission of any one of these acts shall constitute the offense. In such case they may be joined and proof of any one act will justify a verdict of guilty. Further than this, in my opinion, the rule relied upon to uphold this information has never been carried in any well-considered case.

In considering authorities from other states it must be borne in mind that our statute expressly provides that the indictment or information shall charge but one offense (Pen. Code, sec. 954), while elsewhere different offenses may be joined, provided they are charged in different counts, and they are of the same general character and the mode of trial the same. (Wharton's Criminal Pleading and Practice, sec. 285.)

The only authorities from other states, therefore, which will be of value here are those referring to the joinder of different offenses in the same count.

One point made on this appeal by the defendant is that robbing a train means nothing, and therefore the charge is not of an offense. In the leading opinion it is said: "As to what is meant by robbing a passenger train we will not now indulge in surmise." Yet the defendant has been convicted of robbing a passenger train and sentenced to be hanged. He appeals to this

court, as was his right, and makes the point that it is not a public offense.

The court below instructed the jury that "if they believed from the evidence that defendant boarded an express car in a passenger train on the Southern Pacific Railroad at Roscoe station in said county, and by force and violence, or by putting in fear of some injury to the person of the messenger in charge of said car, did rob, steal and carry away any money of any value then in custody or in the control of said messenger, then the jury should find the defendant guilty."

How can this court affirm the judgment on such an appeal without determining what robbing a passenger train means, and that it means just what the trial court said it did?

HENSHAW, J., concurring.—I concur in the dissenting opinion of Mr. Justice Temple.

To what he has said it may be added that there is involved in this dissent no doubt of the power of the legislature to pass the statute under review, nor any doubt of the validity of the statute as a penal law.

The legislature might by a single enactment provide, for example, that every person who commits a murder, every person who commits treason against the state, every person who bears false witness against another by means of which that other loses his life, upon conviction shall be adjudged guilty of felony and shall be punished with death. Such a law would violate no rule applicable to the enactment or interpretation of penal statutes. These offenses are all now punishable by death; yet would anyone assert that under a system of criminal pleading such as ours, which commands that the indictment shall charge but one offense, these acts or any two of them might be charged in one indictment? With deference to the reasoning of the prevailing opinion I think until it became the law of the state he would have been deemed a rash advocate who would have dared so to argue.

And the reason is not far to seek. Such a law, though cast in one enactment, declares against several separate and distinct crimes. Is it less plain that the act under consideration does the same thing?

Where a statute makes penal a single act done with one of several unlawful intents (as the derailing of a train *for the purpose* of injuring property, or *for the purpose* of larceny, or *for the purpose* of killing or maiming its passengers: *People* v. *Milne,* 60 Cal. 71), or where it enumerates a series of acts done with a single unlawful purpose, either of which acts separately or all of which together constitute but the one offense (as making, altering, uttering, passing or attempting to pass a forged and counterfeit instrument: *People* v. *Ah Wo,* 28 Cal. 205), an indictment charging the single act with the multifarious purposes or the several acts with the single purpose is not objectionable.

This is as far as the rule goes, and from the illustrations which Mr. Bishop gives to support his text it is as far as the learned author ever meant to be understood as carrying it. He says in explanation of his statement, quoted in the prevailing opinion:

" Thus, where the statute forbids the unlicensed sale of, for example, rum, brandy, whisky or gin, the interpretation is that the offense may be committed by selling any one or two of the specified liquors, or all of them; and whichever is done in one transaction there is but one crime. So it is not ill to charge in one count that the defendant did offer to sell and suffer to be sold intoxicating liquor. Under a statute the words of which are ' shall willfully destroy, deface or injure,' etc., one may be charged with ' destroying, defacing and injuring' a register. Under a statute to punish one who ' utters or passes or tenders in payment as true' any counterfeit money, it may be charged that the defendant ' did utter and pass as true,' etc. A statute made punishable any one who ' shall sell or offer for sale' any lottery ticket, and it was adjudged not double to charge that the de-

fendant did 'unlawfully offer for sale and did unlawfully sell' a lottery ticket."

After having given these examples the author is careful to point out that "The natures of the offense and of the act should be considered in determining whether or not a charge is double." (1 Bishop's New Criminal Procedure, sec. 436, and notes.)

It is no answer to the contention that boarding a train for the purpose of robbery is a distinct offense from derailing it, to say that the unlawful boarding may tend to derail it. Even a man accused of crime is only chargeable with the natural consequences of his act, and the legislature itself may not declare that to be a natural consequence which in fact is not. But, indeed, in this case it is not the legislature but this court which has done so. The legislature has said only that for his attempted robbery he is guilty of a felony; this decision in effect says that he must be presumed to have intended that his robbery should result in train wrecking. Yet the defendant might have entered the train for purposes of secret theft. He might have entered undetected and have escaped in like manner. It might have been furthest from his thoughts to disturb any person upon the train. It might have been his earnest wish and active endeavor to prevent the train from being wrecked or derailed while he was on it, since in that event he must share the common peril of the others. Still, for doing what he did, he would have violated this law, and his conviction under it would be justified. Yet can it be said that his act was "train-wrecking" or had anything in common with the other acts and offenses enumerated in the statute? His acts do *not* import violence. And it is a part of common reading that when acts of violence are committed by robbers who are themselves upon a train, in consideration of their own safety they first bring it to a standstill that it may not be wrecked.

Nor can I perceive that it would have relieved the embarrassment which seems to have been felt in interpreting this statute if the legislature had in fact desig-

nated the acts as "train-wrecking." Plenary are the powers of that body. Its *ipse dixit* may create a crime, but there is no such magic in a name as will enable even the legislature to make robbery or rape or perjury "train-wrecking" merely because it calls them that.

If in the instance above cited the legislature had said that every person who commits murder, treason or perjury, which costs another his life, shall be guilty of *the unpardonable crime* and on conviction shall suffer death, a common name would thus have been conferred upon three distinct offenses. Could they for that reason have been charged in one indictment?

The suggestion of Mr. Justice Temple that it is incumbent upon this court to define what is meant by "robbing a train" is treated in the last paragraph of the opinion. But even by it the phrase is given no interpretation. It is suggested merely that "very possibly," the legislature intended to use the word "rob," not as it used it in creating and defining the crime of robbery, but as a mere colloquialism, and it is said that "robbing a store" and "robbing a safe" are every-day, ordinary and common expressions. But would an indictment charging a man with robbing a store be upheld? And if so, what is the definition of the offense?

This is the precise question which the defendant in this case puts when he argues that there is no such crime known to the law as robbing a train, and if there be, he asks this court to define it and say whether it means burglary or larceny of goods in a train, or the robbery of some person upon the train.

It would seem that a defendant situated as is this one, under a sentence of death, and appealing to this court as is his right for an interpretation of the law under which he is to be hanged, sentenced under a law which now for the first time is before the court for construction, is entitled to a forthright answer, rather than to a mere conjecture as to what may or may not have been in the legislative mind. Nor is it an answer to say that he is foreclosed because he took no exception to the

trial court's instruction upon the question. He is here within his right in asking the court of last resort to define the law, and it seems hardly to fill the measure of his just demand to tell him that he did not object in another forum to a definition given by somebody else. Moreover, it was not incumbent upon the defendant to take any formal objection and exception to the instructions. His rights in that regard are fully preserved by section 1176 of the Penal Code, which provides: "When written charges have been presented, given or refused, or when the charges have been taken down by the reporter, the questions presented in such charges need not be excepted to or embodied in a bill of exceptions, but the written charges of the report, with the indorsements showing the action of the court, form part of the record, and any error in the decision of the court thereon may be taken advantage of on appeal in like manner as if presented in a bill of exceptions." And when a defendant urges upon this court that the offense with which he is charged is not one known to the law, how it can be said that he is not objecting to instructions which purport to define the offense? The prevailing opinion may be taken as deciding, against defendant's contention, that there is such a crime as "robbing a train"; but whether that crime be the one defined by the instructions or some other, appellant is not told.

To the further defect in the indictment which Mr. Justice Temple points out, namely, that it does not even appear that the attempt to rob and attempt to wreck were directed against the same train, it is answered, not that the pleading does so show, but that it is fairly inferable therefrom, and that the record discloses that the case was tried upon that theory. But this defendant is demurring to the indictment, and an absence of necessary averment is conceded. Is its absence to be supplied by an inference? Then it is not necessary, even against demurrer, to charge that a defendant committed a crime; it is sufficient to plead circumstances from which it may be *inferred* that he committed a crime.

This hearing is on demurrer only. What difference can it make to a logical decision of the question to say that the case was tried upon one or another theory? When the defendant's demurrer was overruled there was nothing for him to do but to submit to a trial upon any theory which met the views of the prosecution and judge.

But, if the prevailing opinion looks for support to the trial of the cause, there can be no objection to scanning the record. The state of things there disclosed shows what the trial court believed to be the scope of the indictment, proves that the defendant was in fact tried upon two (if not three or four) distinct and separate offenses, and demonstrates the vice of the ruling which upholds this pleading.

With the instructions as declarations of principles of law no fault need be found; but, as dealing with a single crime, they are anomalous in the history of the criminal jurisprudence of this state. The jury is instructed: 1. That if defendant threw out a switch with intent to derail a passenger train, he is guilty; 2. If he unlawfully boarded a passenger train with intent to rob said passenger train, he is guilty. (It is not charged to be the same train as that he attempted to derail.) 3. If he boarded an express train at Roscoe station, and by force or violence, or by putting in fear the messenger, robbed and stole money in his custody, he is guilty; 4. If defendant abetted one Johnson in derailing a train, whereby one Masters was killed, then he is guilty. Here there are instructions touching train wrecking, and an attempt at train wrecking; boarding a train with intent to rob it (whatever that may mean); robbery of a messenger upon the train, and murder.

The indictment, double as it is, charges no more than the throwing of a switch with intent to derail a passen- train, and the unlawful boarding of a passenger train at a station with intent to rob it.

These instructions are addressed to evidence admitted under the indictment. But can it be said that they are

applicable to a single crime, or to a series of acts having in view a single purpose?   I am convinced that it cannot.

BEATTY, C. J., concurred in the dissent.

Rehearing denied.

111   261
112   687

111   261
f130   7

111   261
s133  604

111   261
144   701