229 P.2d 495]

## Appellate Department, Superior Court, Los Angeles

[Crim. A. No. 2674. Mar. 30, 1951.]

THE PEOPLE, Respondent, v. STEWART B. ALLINGTON, Appellant.

( 911 )

Frederic H. Vercoe for Appellant.

Ray L. Chesebro, City Attorney, Donald M. Redwine, Assistant City Attorney, and Philip E. Grey, Deputy City Attorney, for Respondent.

BISHOP, J.—The ultimate question to be answered in this case was whether the defendant had been convicted of one or of two offenses. The answer to that question depended upon the answer to be given to a basic question: does section 647, Penal Code, create one, or a dozen or more, public offenses? We have concluded, not without some misgiving, that but one crime is created, and that the defendant should have but one sentence to serve, although he was convicted under two subdivisions of the section. On this appeal, then, from the "judgment of conviction" one of the two judgments imposed is eliminated.

The facts of the case put our conclusion to a severe test. According to the evidence, on April 25, the defendant was captured and arrested by the father of a 14-year-old girl just after the defendant had been seen by her peeping into the window of a room in their garage occupied by her as her bedroom. Count I charged that the defendant was a vagrant because of this peeping incident, alleged to have occurred "on or about April 25." The defendant concedes the legal sufficiency of the evidence to support the conviction as to Count I.

The defendant strenuously contends, however, that this evidence utterly fails to support his conviction under the second count, by which it was charged, again, that he was a vagrant "on or about April 25," this time because he was lewd and dissolute. We are inclined to agree with the defendant as he argues that the facts revealed in connection with the peeping Tom affair were insufficient to show that he was a lewd person. He did peep into the bedroom of a young girl, and his pants were unzipped, when he was arrested, but, without more, it may be this would not be sufficient to substantiate the charge of Count II. But there was more. Two witnesses testified to defendant's actions of a different nature, over a period of some minutes, that took place on February 22 at a different location. The defendant did not attempt at the

trial to contradict the testimony, and makes no claim now that the conduct described as having occurred on February 22 did not indisputably stamp him as being a lewd person. He would avoid the effect of the evidence of the events of February 22 by insisting that those events had no place in his trial, because "You must have positive evidence to prove that a man is a dissolute and lewd person at the time of his arrest in order to justify prosecuting him." This, we are satisfied, is not the law. If it were, then the defendant could forever escape arrest and prosecution for his vagrancy of February 22, because the two women who observed him did not forthwith either themselves arrest him or call an officer to arrest him. We held in *People* v. *Lund* (1933), 137 Cal.App. Supp. 781 [27 P.2d 958], that a person could be arrested in Los Angeles City on a charge of being a vagrant, the acts proving the charge having occurred sometime previously in a neighboring city. We cited and relied upon *People* v. *Craig* (1907), 152 Cal. 42 [91 P. 997], in which an arrest was held justified of one who was proved to be a vagrant by reason of events preceding the arrest by some three months. It is true that the Supreme Court observed that the person arrested "was comporting himself quite consistently with his usual line of conduct at the moment of his arrest." That, too, can be said of the defendant in this case; his conduct on April 25 was quite consistent with the character he had revealed on February 22; there was no suggestion that he had reformed. ■ In both the Lund and Craig cases, though, the acts that disclosed the vagrant's nature antedated the arrest, and we conclude that one may be successfully prosecuted on the charge of being a vagrant although the necessary proof consists of acts that occurred sometime before the arrest.

■ Nor does the variance between the date alleged in Count II "on or about April 25," and that proved, February 22, afford a good reason for reversing the judgment. (*People* v. *Williams* (1945), 27 Cal.2d 220, 226 [163 P.2d 692, 695]. See also *People* v. *Rice* (1887), 73 Cal. 220, 221 [14 P. 851] ; *People* v. *Fuhrman* (1933), 130 Cal.App. 267, 268-269 [19 P. 2d 821, 822] ; *People* v. *Roebling* (1936), 14 Cal.App.2d 586, 589 [58 P.2d 929, 931].)

The conviction on each count is thus seen to be supported, and we have it established that the defendant was a vagrant because he was a peeping Tom on April 25, and a vagrant because he conducted himself in a lewd manner on February

22. May he be charged in one complaint with being twice a vagrant, and upon conviction suffer two periods of imprisonment of 180 days each, to run consecutively? The answer depends upon the intention of the Legislature to be found in section 647, Penal Code, read in the light of the cases which supply governing principles. We quote the section sufficiently to reveal its pattern: "1. Every person (except a California Indian) without visible means of living who has the physical ability to work, and who does not seek employment, nor labor when employment is offered him; or 2. Every beggar who solicits alms as a business, or, . . . 5. Every idle, or lewd, or dissolute person, or associate of known thieves; or, . . . 10. Every common prostitute; or, 11. Every common drunkard; or, 12. Every person who loiters, prowls or wanders upon the private property of another, in the nighttime, without visible or lawful business with the owner or occupant thereof; or who while loitering, prowling or wandering upon the private property of another, in the nighttime, peeks in the door or window of any building or structure located thereon and which is inhabited by human beings, without visible or lawful business with the owner or occupant thereof;

"Is a vagrant, and is punishable by a fine of not exceeding five hundred dollars ($500), or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment."

We would doubtless have reached a conclusion contrary to the one we have expressed had we no guides other than three cases dealing with section 337a of the Penal Code. We refer to *Matter of Roberts* (1910), 157 Cal. 472 [108 P. 315]; *People* v. *Plath* (1913), 166 Cal. 227 [135 P. 954]; and *People* v. *Ghio* (1927), 82 Cal.App. 28 [255 P. 205]. As originally adopted, section 337a was one sentence, not broken up by numbers, paragraphs or other indications of a break in the thought more damming than semicolons. We quote just enough to make the cases understandable: "Every person, who engages in pool-selling . . . .; or who keeps or occupies any room . . .; or who receives, registers or records . . . any . . . bet . . .; or who . . . becomes the custodian or depositary for gain . . . of any money . . .; or who aids . . . in any of said acts, . . . is punishable by imprisonment . . ." The first of the three cases (*Matter of Roberts*) was decided before the section was amended. In an opinion joined in by three of the five Supreme Court Justices who participated in the case, it was said (157 Cal. 472, 474 [108 P. 315]): "Although comprising

but a single sentence, section 337a of the Penal Code creates many distinct offenses. . . . It is written in the disjunctive throughout, and the several offenses therein described are apparently as distinct and independent of each other as if they had been enacted in separate sections.''

No authority was cited in connection with the conclusion just quoted, although, as we shall see, some decisions on the point were available, and the decision seems to us to be inconsistent with the decided cases. Whether it is or not is no longer of consequence, for its conclusion received approval in *People* v. *Plath, supra,* and the last of our three cases (*People* v. *Ghio*) standing upon the first two, declares (82 Cal.App. 28, 32 [255 P. 205, 206]) that each of the six numbered subdivisions into which section 337a is now divided ''constitutes a separate offense as if it had been enacted in a separate section of the code.'' Section 647, too, is now written with numbered paragraphs, and again we state, the three cases dealing with section 337a would be persuasive authorities that section 647 was to be read as though it created twelve or more separate crimes, were it not for a number of other cases.

We quote from two of the earliest of these other cases. In *People* v. *Shotwell* (1865), 27 Cal. 394, 400, these words appear, taken from Wharton's Criminal Law (141) : '' 'Where a statute makes two or more distinct acts, connected with the same transaction, indictable, each one of which may be considered as representing a stage in the same offense, it has in many cases been ruled, they may be coupled in one count. Thus setting up a gaming table, it has been said, may be an entire offense; keeping a gaming table and inducing others to bet upon it, may also constitute a distinct offense; for either, unconnected with the other, an indictment will lie. Yet, when both are perpetrated by the same person, at the same time, they constitute but one offense, for which one count is sufficient, and for which but one penalty can be inflicted.' ''

We find the case of *People* v. *Frank* (1865), 28 Cal. 507, of particular significance, not only because of its content but even more because of the use that is made of it in later cases. We quote one paragraph (513) : ''The indictment is good, whether it be regarded as containing two counts or but one. Where, in defining an offense, a statute enumerates a series of acts, either of which separately, or all together, may constitute the offense, all such acts may be charged in a single count, for the reason that notwithstanding each act may by

itself constitute the offense, all of them together do no more, and likewise constitute but one and the same offense. To illustrate our meaning, take the statute against forgery, under which the indictment in this case was found, where we find several acts enumerated, all of which are declared to be forgery. Thus 'the falsely making,' 'altering,' 'forging,' 'counterfeiting,' 'uttering,' 'publishing,' 'passing,' 'attempting to pass' any of the instruments or things therein mentioned, with the intent specified, is declared to be forgery. Now, each of those acts singly, or all together, if committed with reference to the same instrument, constitute but one offense. Whoever is guilty of either one of these acts is guilty of forgery; but if he is guilty of all of them, in reference to the same instrument, he is not therefore guilty of as many forgeries as there are acts, but of one forgery only. Hence an indictment which charges all the acts enumerated in the statute, with reference to the same instrument, charges but one offense, and the pleader may therefore at his option charge them all in the same count, or each in separate counts, and in either form the indictment will be good. (Wharton on Crim. Law, Sec. 390, 5th edition; *People* v. *Shotwell,* 27 Cal. 394; and *The People* v. *Thompson, ante,* 214.)''

It would extend this opinion beyond justifiable limits to review in any detail the cases lined up on the side of *People* v. *Frank*; that is, finding in the provisions they discuss several crimes, all together amounting to but one. *People* v. *Harrold* (1890), 84 Cal. 567 [24 P. 106], *People* v. *Leyshon* (1895), 108 Cal. 440, 442-3 [41 P. 480], and *People* v. *Dole* (1898), 122 Cal. 486 [55 P. 581, 68 Am.St.Rep. 50], follow *People* v. *Frank* in holding that while various acts each constitute forgery, all do no more. In *People* v. *Fisher* (1911), 16 Cal.App. 271, 273-274 [116 P. 688, 689], it was held that the situation created by the adoption of several sections on embezzlement (Pen. Code, §§ 503-514) was ''no different than it would be where a number of different acts are described in a single section, in which case the commission of any of such acts will constitute the crime,'' but that one offense is charged if several of the acts are set out in one information. The accusatory statement in *People* v. *Thompson* (1896), 111 Cal. 242, 247 [43 P. 748, 749], was held not to charge more than one offense, it having alleged that the defendant had thrown a switch, with intent to derail a passenger train, and had boarded the train to rob it. The statute (Pen. Code, § 218) made any one of four acts a felony but if all were committed, the Supreme Court

stated, but one crime occurred. In *Bealmear* v. *Southern Calif. Edison Co.* (1943), 22 Cal.2d 337 [139 P.2d 20], section 499a, Penal Code, was under scrutiny. The section "defines a single offense," the Supreme Court stated, "and 'enumerates a series of acts, either of which separately, or all together, may constitute the offense.'" In the discussion that followed, the cases, from *People* v. *Shotwell* and *People* v. *Frank*, on down, were passed in interesting review.

Were there a case that appealed to us as decisive of the interpretation to be placed upon section 647 with respect to the question under discussion, we would, of course, content ourselves with citing it. We began to read *Ex parte Salas* (1934), 3 Cal.App.2d 98 [38 P.2d 806], with hope, for the contention was there made that two sentences should not have been imposed following two convictions based on subdivisions 1 and 5 of section 647. But the appellate court failed to see that the record revealed two judgments based on those two subdivisions, so did not express an opinion on our problem. *Ex parte McCarthy* (1887), 72 Cal. 384 [14 P. 96], has been cited as though it were a case in point. The petitioner for a writ of habeas corpus had been convicted upon a complaint charging that she was an idle and dissolute person, who wandered and roamed about the city at late and unusual hours. Her contention, in support of her application, was that the words "without visible means of living," appearing in the first paragraph, modified each paragraph, and should be contained in the charge of any of the subdivisions. The Chief Justice, who denied the application, wrote (72 Cal. 384, 386 [14 P. 96-97]) : "I do not so construe the statute. It enumerates in several groups certain acts which shall constitute vagrancy, and he or she who is guilty of the acts thus enumerated in any one of these groups is liable to the penalty of the statute (*People* v. *Frank*, 28 Cal. [507], 508.)

"The complaint charges all of the acts specified in one of these groups, and is therefore sufficient. The fact that it states in addition some of the acts specified in other and independent groups of the same section does not invalidate it."

We have given *Ex parte McCarthy* as much space as we have because it is cited, along with *People* v. *Harrold, supra,* and *People* v. *Frank*, in support of this statement in *People* v. *Gosset* (1892), 93 Cal. 641, 643 [29 P. 246] : "We do not think that the indictment charges more than one offense because it uses the words 'did deal, play, carry on, and conduct'

the said game. 'Where a statute enumerates a series of acts, either of which, separately or altogether, may constitute the offense, all of such acts may be charged in a single count, for the reason that, notwithstanding each act may, by itself, constitute the offense, all of them together do no more, and likewise constitute but one and the same offense.' ''

Again we find the Frank and McCarthy cases cited, this time in *People* v. *Thompson, supra,* 111 Cal. 242, 252 [43 P. 748, 751] : ''It is conceded that under the act declaring who are vagrants, and prescribing the punishment therefor, the entire series of acts there laid down may be charged in one complaint. (*Ex parte McCarthy,* 72 Cal. 384 [14 P. 96].) . . . In *People* v. *Frank,* 28 Cal. [507], 513, the defendant was charged with falsely making a draft, and also with passing the draft knowing it to be forged, and the indictment was sustained. Such an indictment would be good, even though the false making was done upon one day and the passing was done months subsequent thereto; and even though the false making was done with intent to defraud A, and the passing was done with intent to defraud B. (*People* v. *Harrold,* 84 Cal. 567 [24 P. 106].)''

The McCarthy case is also cited, together with *People* v. *Frank,* in support of similar situations, in *People* v. *Laine* (1919), 41 Cal.App. 345, 349 [182 P. 986, 987] and *People* v. *Clemett* (1929), 208 Cal. 142, 145 [280 P. 681, 682].

Reverting to *People* v. *Plath,* one of the three 337a cases, we find it stated (166 Cal. 227, 231 [135 P. 954, 955-956]) : ''We are of the opinion that the situation in this case is not one where it may fairly be held that we have a statute enumerating 'a series of acts either of which separately or all together constitute *the* offense.' '' (Emphasis given to the definite article is that of the Supreme Court.) The case was distinguished from *People* v. *Frank,* and this significant language was used (166 Cal. 227, 232 [135 P. 954, 956]) : ''The vagrancy statute (Pen. Code, sec. 647), which is relied on by appellant in this connection, does undertake to define a particular offense, to wit: 'Vagrancy,' declaring in eleven different subdivisions what acts shall constitute one a 'vagrant,' and render him liable to the penalty therein prescribed. Even under this statute it has never been held, so far as we can find, that a complaint charging a defendant with each and all of the acts specified in the eleven subdivisions would not be subject to demurrer for failure to comply with the provisions of sections 950, 951, and 952 of the Penal Code.

(See in this connection *People* v. *Lee,* 107 Cal. [477], 480 [40 P. 754].) The case of *Ex parte McCarthy,* 72 Cal. 384 [14 P. 96], relied on in this connection, where the complaint charged the matters contained in two of the subdivisions of the vagrancy section, was a *habeas corpus* proceeding, and inasmuch as the complaint did certainly state facts constituting a public offense within the jurisdiction of the court, it was not a nullity.''

We lengthen this opinion to include these few words from the case cited by the Supreme Court, *People* v. *Lee* (1895), 107 Cal. 477, 480 [40 P. 754, 755] : ''Where, as under some of our statutes, several separate, different, and distinct acts are enumerated, the commission of each or any of which constitutes the crime, it is not sufficient to charge the defendant with being guilty of the crime without further charging the commission of the particular act or acts upon which the crime is based. A person, for example, charged with vagrancy is of right entitled to know whether he is called upon to meet the charge as being a common drunkard, or as being a dissolute associate of known thieves, or as being a healthy beggar, in short, as belonging to what class, or as having habitually committed what act to lay him liable as a 'vagrom man.' ''

We thus discovered that in the legal literature of the state, although no case so decides, section 647 is repeatedly and quite universally regarded as being governed by the *People* v. *Frank* group of cases. We have also seen that that group of cases outnumbers the 337a group. There is, moreover, sound reason for interpreting section 647 as the courts have done. Surely we cannot conclude that the Legislature intended a part of the section to be read as establishing many separate crimes, and a part as establishing separate crimes that totaled but one. ■ That which has been done is not to declare that it is unlawful to get drunk, or to prostitute oneself, or to peep in another's building, nor have these acts been declared to be misdemeanors. The punishment provided by section 647 is not for doing, but for being; for being a vagrant. The section declares who is a vagrant. A common drunkard is a vagrant. Proof of drunkenness on one occasion obviously would not suffice to convict of vagrancy under this subheading, nor would six consecutive days, nor six consecutive weekends, of drunkenness justify six convictions. A common drunk, who lodges in a barn without the permission of the owner, is *a* vagrant, not *two.* One who lodges in an outhouse without the permission of the owner, and who peeps into the owner's house, is

one vagrant, not two.　▮▮▮　The more than twelve means afforded by the twelve subdivisions of section 647 for identifying a vagrant are not so lacking in a common philosophy that the conclusion is required that they must describe different crimes, not just many in one, as they appear to do.

It is doubtless true that the conclusion that we have reached will be attended by difficulties, when other problems than double punishment are involved. But so would any other conclusion. The difficulties that will arise are inherent in this type of legislation, where punishment is prescribed, not for an act but for belonging to a class of persons, and those who fall in the class are determined, some by their attitudes, others by their actions.

We expect, then, such results as that reached in *In re Tom Wong* (1932), 122 Cal.App. 672, 675 [10 P.2d 797, 798], where a judgment was held not to be void which recited that the petitioner had been found guilty of the crime of vagrancy, following his conviction under a complaint that ''charged the petitioner under nearly every one of the twelve subdivisions of section 647.''

We therefore order that the judgment (or judgments) in this case be modified by striking the second paragraph imposing a sentence of 180 days upon Count II, and by striking from the first paragraph the words: ''VIOLATION OF SUBDIVISION 12 SECTION 647 PENAL CODE COUNT I'' and inserting in the place thereof the words: ''being a vagrant, as charged in the complaint''; and that as so modified the judgment is affirmed.

Stephens, J., concurred.

SHAW, P. J.—I. concur, but with the same reluctance suggested in the foregoing opinion. One of the principal reasons leading me to this concurrence is that the Legislature has attached the single name ''vagrant'' to the person who is or does everything described in the section, thus affording, as it were, a common denominator for all these matters and indicating a legislative intent that, though they may seem somewhat variant, they are, for the purposes of this enactment, to be deemed a unit. There may be a limit to the legislative power thus to unify disparate forms of misconduct, but I think it has not been passed here.