[Crim. No. 1646. Second Appellate District, Division Two.—June 2, 1928.]

In the Matter of the Application of LOUIS CHAUS for a Writ of Habeas Corpus.

LeRoy Reames and James R. Jaffray for Petitioner.

E. J. Lickley, City Prosecutor, Joe W. Matherly and F. W. Fellows, Deputy City Prosecutors, for Respondent.

CRAIG, J.—The petitioner herein asks by *habeas corpus* to obtain his release from confinement in the city jail of the city of Los Angeles after sentence by the municipal court upon conviction of a violation of the Wright Act (Stats. 1921, p. 79).

It appears from the record before us that on or about May 23, 1927, petitioner drove an automobile to a point in the vicinity of Tenth Street and Western Avenue, in the

city of Los Angeles, where he received and placed in the machine five gallons of grain alcohol; that he then drove to a cafe or lunch-wagon on Tenth Street, where one Carl W. Bell, *alias* Jack Moore, joined him, and the two men drove around for a short time, finally proceeding to a residence on Fountain Avenue, where Chaus alighted, entering the house, and Bell drove into the garage. Two police officers who had received advance information of the men's intentions, immediately proceeded to the premises, one of whom entered the house, and the other the garage, and placed Chaus and Bell under arrest. Before his arrest Bell removed the alcohol from the car and placed it in a trunk, but apparently it was removed therefrom and set on the trunk; Chaus was led to the garage and questioned about it, whereupon he denied that the can contained alcohol, but later admitted that it did, and stated that he owned it.

Petitioner and Bell were each charged with unlawful transportation and unlawful possession of intoxicating liquor, to both of which charges Bell pleaded guilty. Chaus pleaded guilty to having transported the liquor, and was sentenced to a term of three months in the city jail. To the charge of illegal possession he pleaded not guilty, was tried and convicted, and received for this latter offense a sentence of one year in the city jail. Upon appeals to the superior court by Chaus both judgments were affirmed.

It is contended by the petitioner that he was twice sentenced for the same offense, in that the possession and transportation consisted of but one act, and that having already served three months for transporting the liquor, it is now attempted by the municipal court to confine him for a period of one year for having had possession of the same liquor at the same time. It is insisted by the respondent (1) that this proceeding is in the nature of a collateral attack upon the judgment, and that we should not go behind the judgment to ascertain whether or not the petitioner is entitled to relief; (2) that unlawful possession of intoxicating liquor, and unlawful transportation of the same are separate and distinct offenses, for each of which a penalty may be assessed, and (3) that if resort be had to the facts, the record below will show the commission of separate and distinct offenses, although perpetrated on the same date.

Each of the judgments upon which petitioner was sentenced merely recites that the defendant be imprisoned in the city jail for a violation of the Wright Act, and are based upon complaints which allege, respectively, that Louis Chaus unlawfully transported over and upon Fountain Avenue and St. Andrews Street, and that he unlawfully had in possession at Fountain Avenue and St. Andrews Street, in said city of Los Angeles, certain alcoholic intoxicating liquors.

In *In re Todd,* 44 Cal. App. 496 [186 Pac. 790], the rules both in the state and federal courts are discussed, and the point first urged by respondent apparently finds support. The court there said:

"A proceeding in *habeas corpus* involves a collateral attack upon the judgment in a criminal case, where the prisoner thus seeks his release from personal restraint after judgment of conviction and sentence, and the single question reviewable and determinable therein is one of jurisdiction. Therefore, in the determination in such case of the question whether a judicial tribunal was without jurisdiction of the subject matter of the proceeding thus sought to be reviewed or of the person of the party whose liberty is under restraint by virtue of such proceeding, or whether such tribunal, once having it, had for any legal reason lost jurisdiction to hear the proceeding or to pass judgment therein, the court to which the application is addressed is, *generally speaking* limited solely to the consideration of the judgment-roll, or, as our code defines it (Pen. Code, sec. 1207), 'the record of the action.' . . . "

Other cases holding it to be the uniform rule that, generally speaking, proceedings in *habeas corpus* do not permit of inquiry beyond the face of the judgment are *In re Gutierrez,* 46 Cal. App. 94 [188 Pac. 1004]; *In re Drew,* 188 Cal. 717 [207 Pac. 249], and authorities there cited. It is also true, however, that there are exceptions to this rule, and that in such cases if a judgment, although formal and apparently valid, is nevertheless founded upon facts and proceedings from which alone it may be made to appear that the court was without, or exceeded its jurisdiction, a review of the entire record will be made, as in *certiorari.* And this is particularly true as to judgments of the police and justices' courts from which appeals have been taken and new

trials denied. (*In re Gottschalk*, 47 Cal. App. 260 [190 Pac. 649] ; *In re Drew, supra; In re Lake*, 65 Cal. App. 420 [224 Pac. 126].) In the case last cited it was said:

"The scope of the inquiry which the court can make upon either *habeas corpus* or *certiorari* is precisely the same. (*Ex parte Drew, supra; Commercial Bank, etc.*, v. *Superior Court*, 192 Cal. 395 [220 Pac. 422, 423].) While neither writ is one of error, both extend to the entire record of the court below and to the evidence itself when necessary to determine jurisdiction. (*Hotaling* v. *Superior Court*, 191 Cal. 501 [29 A. L. R. 127, 217 Pac. 73, 75].) This inquiry, of course, cannot go beyond the question of jurisdiction and the review of the evidence is limited to the sole purpose of determining, first, whether jurisdiction existed; and, second, whether jurisdiction was exceeded."

■ We think the instant proceeding is one falling within the exception rather than the general rule. As we have observed, both judgments here involved merely adjudge the petitioner guilty of having violated the Wright Act on the same date. Hence it obviously is necessary that we look beyond the judgments and view the entire record in order that we may ascertain whether one or more offenses were in fact committed, and, as a result of such inquiry, determine whether or not the municipal court exceeded its jurisdiction in attempting to enforce the second judgment.

The penal provisions of the Volstead Act were incorporated into the law of this state, and it is expressly made an offense by said act either to "transport . . . or possess any intoxicating liquor except as authorized by this Act." Both state and federal tribunals have repeatedly held that the several inhibitions of the Volstead Act are separate and distinct. ■ To manufacture, to own, possess, transport, barter, or sell intoxicating liquor, while separate and distinct as a violation of the act of congress, and hence an infraction of the Wright Act, and punishable as such, may, nevertheless, before it can be proven, require evidence tending to establish one or more of the other forbidden acts mentioned. In *People* v. *Mehra*, 73 Cal. App. 162 [238 Pac. 802], after an exhaustive review of many state and federal cases, it was held that unlawful possession of intoxicating liquor in a building was not sufficient evidence with which to convict the occupant of the offense of main-

taining such establishment as a public nuisance for the sale and dispensing of intoxicants, although proof of the latter would warrant a conviction upon both charges of maintaining a public nuisance and unlawful possession. It is therein further held that each act forbidden by the Wright Act, through adoption of the Volstead Act, constitutes a separate, distinct and punishable offense, and the court in its opinion, which our supreme court declined to review, quotes with approval from *Page* v. *United States* (C. C. A., 9th Circuit), 278 Fed. 41, as follows: "The offense of unlawfully possessing liquor is a distinct offense from that of unlawful transportation of liquor." ▇ Evidence merely of unlawful possession is not proof of transportation. A person once having taken possession of liquor, unlawfully, completes a distinct offense forbidden by the statute. We are not unmindful of those decisions upon the principle of which petitioner seeks to rely, holding that the bare apprehension of one driving a vehicle containing alcoholic liquor may not be punished both for possession and transportation, since the former is then a part of, and necessary to, the latter. (*Brown* v. *United States*, 16 Fed. (2d) 682.) Also, a person whose only possession consists of loading the liquor into a vehicle with which he thereafter transports it, is not legally punishable for such possession, as it "was necessary and incidental to the act of transportation." (*Schroeder* v. *United States*, 7 Fed. (2d) 60, 65, citing *Miller* v. *United States* (C. C. A.), 300 Fed. 529, 534, *Morgan* v. *United States* (C. C. A.), 294 Fed. 82, *Rossman* v. *United States* (C. C. A.), 280 Fed. 950, and *Reynolds* v. *United States* (C. C. A.), 280 Fed. 1.) Yet, in *Schroeder* v. *United States, supra,* it was said that possession and transportation may be, and commonly are, distinct offenses; that "Possession for a substantial time, and followed by transportation, might constitute two distinct offenses, just as possession for a substantial time, followed by a sale, might amount to two distinct offenses." As stated in *Bell* v. *United States* (C. C. A.), 285 Fed. 145:

"A person may be in unlawful possession of intoxicating liquor for beverage purposes, and never transport or sell it, as where he has it in possession in an unlawful place. That, having it in possession unlawfully, he should afterwards transport it unlawfully, involves the commission of two

unlawful acts, each violative of the National Prohibition Act, and the court on an accusation, both for unlawful possession and unlawful transportation, in separate counts, could properly impose punishment on each count on a verdict finding the defendant guilty upon each. *Massey* v. *United States* (C. C. A.), 281 Fed. 295.''

Again, in *Hadley* v. *United States,* 18 Fed. (2d) 507, 509, quoting from *Albrecht* v. *United States,* 273 U. S. 1 [71 L. Ed. 505, 47 Sup. Ct. Rep. 98], it was said: ''There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction.'' And the supreme court of the United States there specifically applied the rule to violations of the Volstead Act in the following language: ''The precise question does not appear to have been discussed in either this or a lower federal court in connection with the National Prohibition Act; but the general principle is well established. Compare *Burton* v. *United States,* 202 U. S. 344, 377 [50 L. Ed. 1057, 1069, 26 Sup. Ct. Rep. 688, 6 Ann. Cas. 362]; *Gavieres* v. *United States,* 220 U. S. 338 [55 L. Ed. 489, 31 Sup. Ct. Rep. 421]; *Morgan* v. *Devine,* 237 U. S. 632 [59 L. Ed. 1153, 35 Sup. St. Rep. 712].''

The meager portion presented of the record below does not disclose that Chaus or Bell resided in the vicinity of Tenth Street and Western Avenue, nor that either of them had had possession of the liquor in question prior to the time that petitioner loaded it into the automobile at that point. It does appear, however, that the evidence before the trial court tended to show that Chaus first obtained the alcohol, drove to the cafe for Bell, both then proceeding to the Fountain Avenue house, which Chaus entered and was telephoning while Bell drove to the garage, unloaded the liquor which he placed in a trunk; that Bell pleaded guilty to both possession and transportation of the contraband which admittedly was the property of the petitioner. It is apparent, therefore, that both defendants were guilty of having transported the liquor, and each pleaded guilty to that offense. What disposition they intended to make of it we are not informed. However, since it lies within the legislative powers of congress to denounce as a separate and

distinct offense any substantial possession prior to transportation, which is not incidental to and a necessary part of that offense, and it has so ordained by valid enactment, we see no difference in principle between such a case and one wherein it is shown that the defendants first transported the liquor to some secret cache, and there stored it for future disposition. It further appears from the record that the petitioner was engaged in the illicit sale of intoxicating liquor, and that he contemplated selling his ''route'' to Bell. The logical assumption follows that they did not transport the liquor to the Fountain Avenue address for their own personal consumption, and as to how long they intended that it should remain in the trunk we are not advised, nor do we deem it material. That they had it in their joint possession, and that such possession of the alcohol after being supposedly hidden away for their undisclosed purposes was not necessary nor incidental to the transportation is self-evident.

Voluminous briefs and a great many authorities have been presented by each of the parties, but we think those to which we have made reference in this opinion announce the established rules in such cases. A careful perusal of the briefs and of other decisions than those to which our attention is called fails to disclose any which are distinguishable in principle when applied to similar conditions to those before us.

The writ is discharged and the petitioner is remanded.

Works, P. J., and Thompson, J., concurred.