[Crim. No. 3199. In Bank.—September 14, 1929.]

THE PEOPLE, Respondent, v. F. E. CLEMETT, Appellant.

Raymond E. Hodge, Henry C. Huntington, H. William Hess and Huntington & Hess for Appellant.

U. S. Webb, Attorney-General, John L. Flynn and James S. Howie, Deputies Attorney-General, George H. Johnson, District Attorney, and James L. King, Deputy District Attorney, for Respondent.

SEAWELL, J.—Appeal from judgment of conviction and order denying motion for a new trial.

The defendants, F. E. Clemett, Jessie Clemett, Frank Rathburn and G. W. Poppett, were jointly charged by an information containing two counts filed against them in the Superior Court of the county of San Bernardino with the violation of the provisions of an act entitled "An act relating to stills and other devices for the manufacture or production of intoxicating liquor for beverage purposes, and providing a penalty therefor." The defendants F. E. Clemett and Frank Rathburn being brought to trial, the jury found Clemett guilty on both counts of the information and acquitted Rathburn of both charges upon the advice of the court to do so, given at the conclusion of the case. The defendant Clemett neither demurred to the information nor moved in arrest of judgment.

The case was taken over after decision by the District Court of Appeal, Second District, Division One, not because we questioned the sufficiency of the evidence to sustain the conviction upon either of said counts, nor because reversible error was pointed out by the petition for hearing upon any ruling made or instruction given or refused by the trial court, but solely for the reason that we entertained grave doubt as to whether two separate crimes had been committed by the defendant within the purview of the act as above entitled (Stats. and Amdts. 1927, chap. 277, p. 497), the body of which is in the following words:

"Any person whether acting in his own behalf or as the agent, servant, officer or employee of any person, firm, association or corporation who shall be the owner of or have any interest in or who shall operate or cause to be operated or knowingly have in his possession or control, any still, still worm, still cap, still condenser or stilling device of any kind, designed, used, or intended for use in the manufacture or production of intoxicating liquor for beverage purposes, shall be guilty of a felony and upon conviction thereof shall be punished by a fine of not less than One Thousand ($1000) Dollars nor more than Five Thousand ($5000) Dollars and by imprisonment in the state prison for not less than one year nor more than five years."

It is apparent from the act that it was adopted to prevent the illicit manufacture and production of intoxicating liquor for beverage purposes by the use of stilling devices of any kind designed or intended to be used in the manufacture or production of intoxicating liquor for beverage purposes. In other words, its enactment was intended as an aid to a more complete enforcement of the national and state prohibition acts.

As early as *People* v. *Shotwell*, 27 Cal. 394, and *People* v. *Frank*, 28 Cal. 507, it was held that co-operative acts constituting but one offense when committed by the same person at the same time, when combined, charge but one crime and but one punishment can be inflicted as one offense. "Where a statute makes two or more distinct acts connected with the same transaction indictable, each one of which may be considered as representing a stage in the same offense, it has in many cases been ruled they may be coupled in one count. Thus, setting up a gaming table, it has been said, may be an entire offense; keeping a gaming table and inducing others to bet upon it, may also constitute a distinct offense; for either, unconnected with the other, an indictment will lie. Yet when both are perpetrated by the same person, at the same time, they constitute but one offense, for which one count is sufficient, and for which but one penalty can be inflicted." (Wharton on Criminal Law, approved in *People* v. *Shotwell*, 27 Cal. 394.) Again, in *People* v. *Frank*, 28 Cal. 507, it was said;

"The indictment is good whether it be regarded as containing two counts or but one. Where, in defining an offense, a statute enumerates a series of acts, either of which separately, or all together, may constitute the offense, all such acts may be charged in a single count, for the reason that notwithstanding each act may by itself constitute the offense, all of them together do no more, and likewise constitute but one and the same offense."

This court in *People* v. *Thompson,* 111 Cal. 242 [43 Pac. 748, 751], quotes approvingly the following excerpt from the court's disquisition in *State* v. *Cooster,* 10 Iowa, 454, in holding that an indictment did not state two offenses because it charged the defendant with keeping a gambling-house and permitting other persons in a place under the control of defendant to play for money and other things:

" 'The objection has its origin in the idea that there is such a difference in the essential qualities of these two acts as to make them separate offenses. But is this true? They are found in the disjunctive clause of the same section of the code, visited with the same penalty, and it is the better opinion that in their essence they are one and the same offense, the guilt of which may be incurred in one or the other of these methods.' "

That the rule announced in said earlier decisions is the settled law of this state is confirmed by many subsequent cases. (*People* v. *De La Guerra,* 31 Cal. 460; *Ex parte McCarthy,* 72 Cal. 384 [14 Pac. 96] ; *People* v. *Harrold,* 84 Cal. 567 [24 Pac. 106] ; *People* v. *Gosset,* 93 Cal. 641 [29 Pac. 246]. ; *People* v. *Thompson,* 111 Cal. 242 [43 Pac. 748] ; *People* v. *Gusti,* 113 Cal. 177 [45 Pac. 263] ; *People* v. *Kuder et al.,* 93 Cal. App. 42 [269 Pac. 198] ; *People* v. *Barnnovich,* 16 Cal. App. 427 [117 Pac. 572].)

▮ All of the acts set out in the statute before us for construction are coupled with the disjunctive "or," one of which or all of which joined constitute but one offense. By count one it is alleged that the defendants on or about the third day of January, 1928, *and prior thereto* (not stating whether it was one day or more prior to January 3, 1928), did wilfully, unlawfully and feloniously have in their *possession* and under their *control* one still, etc. By the second count it is charged that said defendants on or about the third day of January, 1928, and for a period

of *about five months continuously next prior thereto*, did wilfully, etc., *operate and cause to be operated* one certain still, etc. If he *operated* and caused to be operated said still it was indisputably in his possession and under his control. The operation of the still includes a longer period than is included within the averment that the still was under his control. It is alleged that he operated it for about five months prior to January 3, 1928, a definite fixed period, while it is alleged in the other count that he had it in his possession and under his control on or about January 3, 1928, and prior thereto. Under the rule of pleading the possession and control clause may be limited to one day prior to January 3, 1928, or at most a reasonable time prior thereto and could under no rule of construction be extended backward beyond the period of five months during which time it is alleged the defendant was operating the same still. Clearly the possession and control period is covered by the period during which the defendant operated said still. The defendant may have had a still in his possession or under his control without operating the same, but he could not have operated it without having it under his control and in his constructive possession. The possession and control period is included in the period of operation, inasmuch as possession and control were incidental to operation. We have read all of the evidence adduced in the case and this conclusion is fully confirmed by the fact. The same principles applied and reasoning adopted by courts generally in distinguishing the two offenses of possession and transportation are applicable to the instant case.

In *Schroeder* v. *United States*, 7 Fed. (2d) 60, 65, the rule is well stated:

"Possession for a substantial time, and followed by transportation, might constitute two distinct offenses, just as possession for a substantial time, followed by a sale, might amount to two distinct offenses. But, where the only possession shown is that which is necessarily incidental to the transportation, the offense is single, and not double. (*Miller* v. *United States*, 300 Fed. 529, 534; *Morgan* v. *United States*, 294 Fed. 82, 84; *Rossman* v. *United States*, 280 Fed. 950, 953; *Reynolds* v. *United States*, 280 Fed. 1.) And the law is settled that, where a person is tried and

convicted of a crime which has various incidents included in it, he cannot thereafter be tried and punished for an offense consisting of one or more of such incidents. To do so would be to inflict double punishment. (*In re Nielsen*, 131 U. S. 176, 185 [33 L. Ed. 118, 9 Sup. Ct. Rep. 672, see, also, Rose's U. S. Notes] ; *United States* v. *Hampden*, 294 Fed. 345, 348.) "

The severity of the penalty for the violation of the provisions of the act, the maximum being five years' confinement in the state prison, and a fine of $5,000, is in confirmation of our construction. It was not the intent of the legislature that the several acts named in the statute before us should be split into several separate offenses for the purpose of imposing a penalty for the violation of each singly. There are cases in which a person may be guilty of both transportation and possession of intoxicating liquor, as shown by the circumstances of the particular case. Such cases are discussed in *Ex parte Chaus*, 92 Cal. App. 384 [268 Pac. 422].

We are of the view, upon the authority heretofore cited, that the legislature prescribed but one punishment for a violation of said act, the punishment therefor to be meted out as the facts of the case might warrant.

■ The guilt of the defendant cannot, upon any reasonable grounds, be doubted.

Roy Bearden and wife, who resided with their family in the city of Los Angeles, had an interest and were in possession of an orange orchard containing approximately two and one-half acres situate near Fontana, San Bernardino County. It was somewhat remote from other residences and there was very little general highway travel near said orange orchard. The orange trees were large and they and other trees shielded the inner premises from public view. Mr. Bearden had constructed upon said premises a building 100 feet in length, 16 feet wide and 5½ feet in height on the north side and 11 feet in height on the south side, with the intention of engaging in raising chickens. The place was unoccupied until possession was taken by appellant and his confederates. Appellant, whose name appears to be Clemett, lived at San Diego before coming to San Bernardino. On May 29, 1927, he and a man whose name has not been satisfactorily established, arrived at

the residence of the Beardens in Los Angeles and, the Beardens not being at home, appellant wrote a note and affixed it to the doorknob, stating the business he wished to see Mr. Bearden on and that he would return. Between 11 and 12 o'clock that night he did return and introduced himself as Mr. G. L. Johnson and the man who accompanied him as his brother. He stated that he was in the poultry-raising business in San Diego, and that he wished to transfer his business to San Bernardino County; that he had 750 chickens which he wished to transport to said San Bernardino County. After talking over the terms of lease of the Bearden place for some time the two men left with the understanding that appellant would meet Bearden at his ranch on the following day; Bearden, with his family, consisting of his wife, two daughters and son, met the appellant and his supposed brother agreeable to said appointment, and appellant permitted himself to be introduced to Mrs. Bearden and the daughters and son as Mr. Johnson and the other man was introduced as Johnson's brother. An agreement was finally reached whereby defendant Clemett, under the name of G. L. Johnson, executed with Bearden a one-year lease at the rate of $25 per month. He said that he might want to buy the property later. Appellant paid down $50 and thereafter paid personally other rentals until about December, when he entered into negotiations to buy said property through the intermediary of a woman, who was represented to be Mrs. Lenora Fredrickson, the daughter of a Mr. Winters, but who in fact was the Jessie Clemett jointly charged with the appellant. Positive evidence was adduced to the effect that she was the wife of appellant Clemett. The man represented to be Winters, reputed father of Lenora Fredrickson, was really G. W. Poppett, also jointly charged by the information herein with appellant and Lenora Fredrickson.

The lease was executed by appellant in the name of "G. L. Johnson" and upon delivery of the escrow papers he requested that the old lease, which had served its purpose, be delivered to him, which request Mrs. Bearden granted. Appellant furnished the purchase money and the escrow papers were executed by Mrs. Lenora Fredrickson. G. W. Poppett, who assumed the name Winters,

went into possession immediately upon execution of the lease, and remained in possession until the premises were raided by the under-sheriff and two deputies sheriff of the county. A section of the chicken-house had been converted into a place for the manufacture and distillation of intoxicating liquors on a large scale. Poppett, *alias* Winters, was found to be in charge. The property seized consisted of a 250-gallon still; 28 barrels of mash of 50 gallons capacity each; 6 30-gallon barrels of mash; 70 gallons of alcohol; 1 electric ager; 30 empty 30-gallon barrels, besides jugs and bottles. The still was warm and was designed and fully equipped in every way for use and was intended to be used and was in use in the manufacture and production of intoxicating liquor for beverage purposes, as it had no doubt been used for several months. The criminal participation of the defendant in the violation of the provisions of said act was established by such a number of incriminating facts and circumstances as to leave no doubt of his guilt.

It was the desperate effort of the appellant at the trial to separate himself from his *alter ego* G. L. Johnson and in attempting to do so, in the face of the positive and convincing testimony of four or five witnesses to the effect that he represented himself to be G. L. Johnson, and executed papers in the name of Johnson, and even went so far as to draw a check on a bank for $1,000, which was paid on the purchase of said premises against funds which he had previously deposited in the name of G. L. Johnson, and paid and caused to be paid demands against Johnson on account of the ownership of said premises, he denied that he held himself out as Johnson and made the absurd claim that when he called upon Mr. Bearden, with whom he had had no previous acquaintance, to negotiate the leasing of his premises, that in introducing himself to him he did not refer to himself by any name, but merely introduced the man who was with him as "brother Johnson" and the several witnesses were mistaken in understanding him to introduce the unidentified man as his brother. His account of his first meeting with the man who was with him and concerning whom he would give the impression was the real G. L. Johnson, is as absurd as the other explanations

he made in absolving himself of any connection with operating said still. His testimony was that he went from San Bernardino to Tia Juana on a pleasure trip alone and while there, by chance, he met the genuine G. L. Johnson and Mrs. Fredrickson, both strangers to him, in a saloon where the three were casually thrown together; that the three spent the day together drinking and enjoying a social day, and Johnson then told him that he was interested in the chicken raising business and that he had a flock of 750 chickens in San Diego; that he desired to locate at San Bernardino and made an agreement with appellant to pay him $500 if he would find a place there which he might lease that was suitable for his business; that Johnson afterward came to San Bernardino and sought him out and that he called his attention to the Bearden place; that the lease being consummated for a term of one year at a rental of $25 per month, Johnson afterward concluded to buy the property and paid him $500 for negotiating the lease in accordance with his promise made at Tia Juana, and in addition thereto placed $1,000 in his hands to pay the Beardens for their equity in said property. He deposited this sum in a bank in the name of G. L. Johnson and drew a check against it in concluding the transaction by signing Johnson's name to the check and passed the money to Mrs. Frederickson, who applied it to the purchase of said property. The mysterious Johnson for whom he was acting did not disclose his personnel in any of the transactions of lease, purchase or control of the property other than through Clemett, the appellant. Appellant took the witness-stand and his testimony was most completely discredited by the many contradictory statements made in his testimony, as well as by the inherent improbability of its truthfulness in many material respects and by the testimony of witnesses, whose testimony, sounding in reason, was doubtless credited by the jury.

The jury's verdicts were rendered on the counts separately and the judgments were correspondingly pronounced. For the reason herein stated, the judgment pronounced upon count one, which charged control and possession of said still, etc., is reversed. The judgment rendered upon count two, which charged the wilful, unlawful and felonious operation of a certain still or device designed for use in the

manufacture of intoxicating liquor for beverage purposes, etc., and the order denying a new trial upon said issues are each affirmed.

Richards, J., Shenk, J., Langdon, J., Preston, J., and Waste, C. J., concurred.