[Civ. No. 2967. Fourth Dist. June 30, 1942.]

W. C. WILDE, Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY et al., Respondents.

Clarence Harden for Petitioner.

Thomas Whelan, District Attorney, and Duane J. Carnes and Robert E. Jenson, Deputies District Attorney, for Respondents.

Jerold E. Weil, as Amicus Curiae, on behalf of Respondents.

MARKS, J.—This is a proceeding instituted in this court to review an order holding petitioner guilty of contempt of court, and punishing him by the imposition of a fine of $300 to be collected by one day's imprisonment for each two dollars of such fine in case it be not paid.

On January 20, 1941, petitioner, who had been an attorney at law, was permanently disbarred from practice in this state.

The material facts recited in the petition filed here should be briefly summarized. It recites that on December 2, 1936, judgment was recovered in the sum of $778.57 by plaintiffs in the Superior Court of San Diego County in an action entitled Union Trust Company of San Diego and Mortimer Rieser, as executors of the last will and testament of William B. Gross, deceased, substituted plaintiffs v. Meryl P. Bennett and Charles F. Naylor, defendants; that $313.50 was paid on the judgment on October 7, 1941; that the balance was unsatisfied; that by a writing dated March 30, 1936, and filed September 30, 1941, plaintiffs' cause of action was assigned to Ethel Eaton who was the secretary of petitioner and who took the assignment in her name for the convenience of petitioner; that she was never the actual or beneficial owner of the cause of action and judgment; that on September 6, 1941. Ethel Reed (formerly Ethel Eaton) in writing assigned the cause of action and judgment to plaintiff; that this assignment was filed September 30, 1941; that both assignments authorized the respective assignees to take any and all steps necessary or desirable to collect and enforce payment of the judgment in the names of the plaintiffs or otherwise; that on October 10, 1941, petitioner, in *propria persona*, as assignee of the judgment creditor, filed a veri-

fied petition and application for an order charging with the lien of the judgment a partnership interest of Meryl P. Bennett in a partnership in which it was alleged he was a member; that an order to show cause was issued and came on for hearing on November 3, 1941; that petitioner, as assignee of the judgment, appearing in *propria persona,* presented the petition to the judge presiding who found that the ''judgment was assigned (to petitioner) solely for collection'' and found him guilty of contempt for violating the provisions of section 6130 and of subdivisions *a* and *b* of section 6127 of the Business and Professions Code; that during the presentation of the petition to the court, petitioner stated to the judge presiding that he was the beneficial owner of the cause of action and judgment assigned to Ethel Reed and became the absolute, sole and record owner thereof under the assignment of September 6, 1941, and was presenting the petition as petitioner in *propria persona* solely in his own interest as such owner for himself and not for or on behalf of anyone else; that he offered to produce Ethel Reed ''as a witness who would testify that said W. C. Wilde at all times since said March 30, 1936, has been and now is the absolute, beneficial and sole owner of said cause of action and judgment and that she had never had any personal or beneficial interest therein but that she so took and held the same in her name for the use and benefit of said W. C. Wilde and as his property.''

The petition then summarized the various proceedings which resulted in the judgment in question and in the two assignments. On September 2, 1932, William B. Gross, through petitioner, as his attorney, filed an action in the Justices' Court of San Diego Township to recover a money judgment against Bennett and Naylor; that Gross died May 25, 1933, and his executors were substituted as plaintiffs; that on March 3, 1936, judgment was rendered in the•justices' court in favor of plaintiffs in the sum of $391.45. This is the cause of action and judgment which was assigned to Ethel Eaton.

It is also alleged that claims were presented to the executors of the Gross estate by petitioner and two others totaling $386.40; that suit was filed in the justices' court on these claims in the name of Ethel Eaton; that the executors filed a cross-complaint in this action seeking to recover judgment against Wilde; that another action was pending against

Wilde on a claim in favor of Gross; that these cross demands were compromised which compromise was approved by order of the superior court in which the Gross estate was being probated which order authorized the executors to assign the claim and judgment against Bennett and Naylor; that the other actions were dismissed; that Wilde paid the other claimants the full amount of their claims against the estate of Gross; that in accordance with the order of the probate court the claim and judgment against Bennett and Naylor was assigned to Ethel Eaton ''solely for the use and benefit and beneficial interest of said W. C. Wilde and as his property.''

Respondents maintain that the court cannot base its decision on any of the allegations of the petition. (*Donovan* v. *Board of Police Commissioners,* 32 Cal. App. 392 [163 Pac. 69]; *Goodrich* v. *Superior Court,* 92 Cal. App. 695 [268 Pac. 669].) Whatever may be the correct rule in cases of this kind we do not need to refer to the allegations of the petition again except to shorten the subsequent summary of the return filed and of testimony taken. However, it was stipulated at the hearing that the petition be considered a traverse to the return. It is unnecessary to determine the propriety of this proceeding.

The return filed by respondents consists of a clerk's transcript of the superior court action, there having been an appeal taken from a justices' court judgment. The documents show the pleadings in the action of *Gross* v. *Bennett* and Naylor in the justices' court, the substitution of the executors as plaintiffs, the judgment for plaintiffs dated March 3, 1936, and the assignment to Ethel Eaton, as set forth in the petition. This assignment recites that it was made pursuant to an order of the Superior Court of San Diego County in the Matter of the Estate of William B. Gross, deceased. A copy of this order is not in the record. The record contains a notice of appeal from the judgment of the justices' court, an undertaking on appeal, the judgment of the superior court and other files not necessary to mention. It concludes with the order adjudging Wilde guilty of contempt. In the judgment in the superior court action against Bennett and Naylor, Wilde was allowed $100 attorney's fees.

There is no indication in the record that any testimony was taken at the hearing which resulted in the order holding

Wilde in contempt so that order must be supported, if at all, by the record contained in the return.

Over the strenuous objections of respondents, Wilde was called as a witness in his own behalf and was permitted to testify at the hearing before this court. His evidence substantiated the material allegations of his petition already summarized, as well as the part of the return relating to the appeal. He also testified that after he had been held guilty of contempt the balance of the judgment against Bennett and Naylor was paid to him in full; that the money was his; that he divided it with no one and that no other person had any claim upon it or any part of it.

The first important question to be considered is the propriety of the ruling of this court permitting Wilde to testify here, for, if his evidence can be considered, it establishes without dispute that he was the actual bona fide owner of the judgment and that it was not "assigned to him for collection" as found by the trial court. (§ 6130, Bus. & Prof. Code.) Nor was he "Assuming to be an officer or attorney of a court and acting as such, without authority" nor "Advertising or holding oneself out as practicing or as entitled to practice law or otherwise practicing law in any court, without being an active member of the State Bar," (Subds. (a) and (b), § 6127, Bus. & Prof. Code.) as found by the trial court as the basis of the order of contempt. ▆▆▆ A disbarred lawyer presenting his own cause in court, on a claim actually and legally acquired before disbarment, does not assume to be an officer or attorney of the court and does not act as such without authority. Nor does he hold himself out as practicing or as entitled to practice law by a single appearance in court in his own behalf in pressing his own individual claim so acquired before disbarment.

Counsel have been diligent in their citations of authorities on all questions argued by them. It would unduly extend this opinion to attempt to review the many cases cited and we will not attempt to do so.

▆▆▆ In considering the question of the propriety of the reviewing court receiving evidence not in the return, it must be admitted that there is a general rule, rather firmly supported in the earlier cases, that the review should be confined to the record before the lower court in order to determine if it acted without or in excess of its jurisdiction. However,

even in the earlier cases it was suggested that there might be exceptions to this general rule.

In *Los Angeles* v. *Young,* 118 Cal. 295 [50 Pac. 534, 62 Am. St. Rep. 234], relied upon by respondents, the Supreme Court said:

"Upon certiorari, if it becomes necessary for the court of review to be put in possession of the facts upon which the court below acted, and which are not technically. of record, it is competent for that court to require the lower court to certify such facts in its return to the writ, and this statement of facts would then be a part of the record. (2 Spelling on Extraordinary Relief, § 2020.) Under this principle it was not, perhaps, improper for the trial court to admit the evidence of Yonken, not as contradicting the record of the justice, but as supplemental thereto. (*People ex rel. Whitney* v. *San Francisco Fire Dept.,* 14 Cal. 479.) "

In *Donovan* v. *Board of Police Commissioners,* 32 Cal. App. 392 [163 Pac. 69], also relied on by respondents, the court said:

"However, the court to whom the petition is addressed may, it seems, in the exercise of its discretion, and for the purpose of determining whether or not, despite the irregularities complained of, injustice may be done by the issuance of the writ, resort to evidence from without the record sought to be reviewed. (Citing cases.)"

More recent cases in which evidence outside of the record to be reviewed was received before the Supreme Court, are, *In re Mooney,* 10 Cal. (2d) 1 [73 P. (2d) 554]; *In re Connor,* 16 Cal. (2d) 701 [108 P. (2d) 10], and *In re Bell,* 19 Cal. (2d) 488 [122 P. (2d) 22].

*In re Mooney* was heard by the Supreme Court of this state in response to a suggestion of the Supreme Court of the United States in denying, without prejudice, Mooney's application to file an original petition for a writ of habeas corpus in the latter court seeking his release from confinement on the ground he had been convicted on testimony which, after his conviction, was proved to have been perjured and that evidence favorable to him had been wilfully suppressed by the prosecutors and thus he had been denied the due process guaranteed by the federal Constitution. (*Mooney* v. *Holohan,* 294 U. S. 103 [55 S. Ct. 340, 79 L. Ed. 791, 98 A. L. R. 406].)

A similar petition was filed in the Supreme Court of this

state. A writ was issued and a referee was appointed for the purpose of taking evidence. For more than a year the referee took evidence in San Francisco and various cities throughout the United States. His report, says the Supreme Court, consisted of "twenty volumes, containing 13,416 pages of evidence or proffered evidence and hundreds of exhibits". This evidence, much of it obviously outside the record of the superior court to be reviewed, was carefully considered by the Supreme Court in reaching its decision. This case is an example of an exception to the earlier general rule prevailing in this state, if it does not establish a new rule to govern later proceedings.

*In re Connor, supra,* was also heard as the result of a writ of certiorari issued by the Supreme Court of the United States to the Supreme Court of California. A former judgment was vacated and the cause was remanded for further consideration. (*Connor* v. *California,* 309 U. S. 631 [60 S. Ct. 708, 84 L. Ed. 989].) In accordance with this order the Supreme Court of this state issued a writ of habeas corpus and proceeded to review the case. At the hearing before that court a photostatic copy of a letter written by petitioner, not a part of the record of the court below, was offered and received in evidence after objections to its introduction in evidence had been overruled. This letter was considered by the court and furnished a partial basis for one of the conclusions reached. In commenting on the scope of the inquiry in such proceedings it was said:

"The scope of inquiry on *habeas corpus* in this state may, as above stated, under exceptional circumstances, extend over the entire course of proceedings in the lower courts. (*In re Lake,* 65 Cal. App. 420 [224 Pac. 126]; *In re Friday,* 138 Cal. App. 660 [32 P. (2d) 1117]; *In re Connolly,* 16 Cal. App. (2d) 709 [61 P. (2d) 490], and cases cited), and may embrace additional evidence received by this court either directly or under an order of reference. (*In re Mooney,* 10 Cal. (2d) 1 [73 P. (2d) 554].) . . . In defining the scope of inquiry in the federal courts it is stated in *Frank* v. *Mangum,* 237 U. S. 309, 331 [35 Sup. Ct. 582, 59 L. Ed. 969], that upon an application for a writ of *habeas corpus* the court has the right 'to look beyond forms and inquire into the very substance of the matter, to the extent of deciding whether the prisoner has been deprived of his liberty without due process of law, and for this purpose to inquire into

jurisdictional facts, whether they appear upon the record or not.' "

*In re Bell, supra,* was also a case in which the Supreme Court had occasion to consider the scope of the inquiry in the reviewing court under a writ of habeas corpus. It was there said:

"A petitioner seeking habeas corpus, however, is not confined to the face of the record in attempting to sustain the burden of proving that his conviction was in violation of his constitutional rights. The courts of both the United States and California have declared, that the remedy of habeas corpus permits an examination not only of the actual evidence introduced at petitioner's trial but of any necessary additional evidence bearing upon the infringement of petitioner's constitutional rights. (Citing cases.)"

It therefore seems to be settled that now, in habeas corpus proceedings, the reviewing court, in exceptional cases, in order that justice may be done, and in order that the petitioner may not be deprived of his constitutional right to due process, may receive and consider evidence outside of the record to be reviewed. The question arises: Does this rule prevail in proceedings in certiorari?

It has repeatedly been held in this state, as said in *In re Lake,* 65 Cal. App. 420 [224 Pac. 126], that:

"The scope of the inquiry which the court can make upon either habeas corpus or certiorari is precisely the same. (*Ex parte Drew,* 188 Cal. 717. [207 Pac. 249, 250]; *Commercial Bank etc.* v. *Superior Court,* 192 Cal. 395 [220 Pac. 422, 423].)"

(See, also, *In re Wilkins,* 66 Cal. App. 754 [226 Pac. 964]; *In re Chaus,* 92 Cal. App. 384 [268 Pac. 422]; *In re Sears,* 137 Cal. App. 308 [30 P. (2d) 571]; *In re Connolly,* 16 Cal. App. (2d) 709 [61 P. (2d) 490].) We therefore conclude that under the rule already considered, and under the circumstances here, we may receive and consider the evidence of petitioner given before this court, not to impeach the record made in the court below but to supplement and explain it and to develop the true facts upon which must rest the question of the jurisdiction of the superior court to punish petitioner for contempt.

██ As we have already observed the trial court based its order solely upon violation of the sections of the Business and Professions Code already referred to.

Section 6130 of that code provides as follows:

"No person, who has been an attorney, shall while a judgment of disbarment or suspension is in force appear on his own behalf as plaintiff in the prosecution of any action where the subject of the action has been assigned to him subsequent to the entry of the judgment of disbarment or suspension and solely for purpose of collection."

Under this section the disbarred attorney must not only appear in court in his own behalf on a claim assigned to him after disbarment, but the assignment must have been "solely for the purpose of collection." Here, while the actual assignment was made after disbarment, it clearly appears that for several years prior to such assignment, petitioner had been the actual owner of the claim and that the assignment was not solely for the purpose of collection, but to complete the record title and vest in him what was already his. Nor do the facts before us bring the case within the provisions of section 6127 of the Business and Professions Code for reasons already noted.

 It is true that the writ of certiorari may be used only to review an order or a judgment of an inferior court to determine if it acted without or in excess of its jurisdiction. In cases of contempt committed outside the presence of the court it is necessary that the affidavit charging the contempt show facts which actually constitute contempt. (*Hotaling* v. *Superior Court,* 191 Cal. 501 [217 Pac. 73, 29 A. L. R. 127]; *Wutchumna Water Co.* v. *Superior Court,* 215 Cal. 734 [12 P. (2d) 1033].) In cases of contempt committed in the presence of the court, the order adjudging the contempt must also recite facts which actually constitute contempt. It is also true that as the proceedings are of a criminal nature no presumptions may be indulged in favor of the judgment. These rules were clearly stated in *In re Lake, supra,* as follows:

"The reason for this rule is clearly stated in the Hotaling case, from which we quote (191 Cal. 501 [29 A. L. R. 127, 217 Pac. 74]): 'Contempt of court is a specific criminal offense. [Citing cases.] A contempt proceeding is not a civil action either at law or in equity (herein disagreeing with *Ex parte Selowsky,* 189 Cal. 331 [208 Pac. 99, 100]) . . . , but is a separate proceeding of a criminal nature and summary character (*McClatchy* v. *Superior Court, supra* (119

Cal. 413 [51 Pac. 696, 39 L. R. A. 691]); *In re McCarty,* 154 Cal. 534 [98 Pac. 540]; *Schwartz* v. *Superior Court,* 111 Cal. 106 [43 Pac. 580]; *Selowsky* v. *Superior Court,* 180 Cal. 404 [181 Pac. 652]), in which the court exercises but a limited jurisdiction. . . . The proceeding is of such a distinctly criminal nature that a mere preponderance of evidence is insufficient.' Following this statement of principles the court then announces the rule in such clear and succinct language that we can do no better than quote it in full: 'While the writ of *certiorari* is not a writ of error, it nevertheless extends to the whole of the record of the court below and even to the evidence itself where necessary to determine jurisdiction. [Citing cases.] *In reviewing this proceeding, the charge, the evidence, the findings and the judgment are all to be strictly construed in favor of the accused (Schwartz* v. *Superior Court, supra), and no intendments or presumptions can be indulged in aid of their sufficiency. (Frowley* v. *Superior Court, supra, [158 Cal. 220, (110 Pac. 817)].) If the record* of the proceedings, reviewed in the light of the foregoing rules, *fails to show affirmatively upon its face* the existence of all the necessary facts upon which jurisdiction depended, the order must be annulled. (*Frowley* v. *Superior Court, In re McCarty,* and other cases above cited.)' (Emphasis ours.)

"The court was there considering a case of constructive contempt. The case before us is one charging a contempt committed in the immediate view and presence of the court. The difference is that in cases of constructive contempt an affidavit must be filed containing a formal charge upon which a hearing must be held, while in these cases the court may proceed summarily without a charging affidavit. In the latter case the order of commitment must state the facts constituting the contempt (§ 1211 Code Civ. Proc.) and, on review, this order must bear the same scrutiny as is given the affidavit in the former case. . . . There is the same unanimity of opinion supporting the rule that in cases of direct contempt the order of commitment is void 'unless it shows on its face acts sufficient to constitute a legal contempt. The order must contain a statement of facts equivalent to those which the law says must be incorporated in an affidavit for constructive contempt; and such facts must prove the contempt. Mere conclusions are not sufficient.' (5 Cal. Jur. pp. 950, 951.)"

■ Jurisdiction of the court in contempt cases, like those in

which reviews of awards of the Industrial Accident Commission are sought, depends on the existence of evidence showing that an actual contempt of court has been committed. In the absence of such evidence a court pronouncing a judgment of contempt lacks jurisdiction and its order should be annulled. (*In re Lake, supra; In re Chaus, supra; In re Cunha*, 123 Cal. App. 625 [11 P. (2d) 902, 18 P. (2d) 979] ; *In re Cutler*, 1 Cal. App. (2d) 273 [36 P. (2d) 441] ; *In re Roberts*, 2 Cal. App. (2d) 70 [37 P. (2d) 477] ; *King* v. *Superior Court*, 12 Cal. App. (2d) 501 [56 P. (2d) 268] ; *In re Critchlow*, 11 Cal. (2d) 751 [81 P. (2d) 966].)

The reasons for this rule in contempt cases are stated in *King* v. *Superior Court, supra*, as follows:

"When jurisdiction to inquire and act depends upon the existence of certain facts, the absence of proof of such facts limits the power to that of inquiry only, and if action is attempted it is in excess of jurisdiction. The same reasoning is applied to cases before the Industrial Accident Commission. It is thus stated in *In re Lake*, 65 Cal. App. 420 [224 Pac. 126] : '. . . This inquiry, of course, cannot go beyond the question of jurisdiction and the review of the evidence is limited to the sole purpose of determining, first, whether jurisdiction existed; and, second, whether jurisdiction was exceeded. Thus, where the question is whether jurisdictional facts were or were not proved, the review extends not only to the entire record but to the evidence itself. [Citing cases.] In *Van Hoosear* v. *Railroad Com., supra*, the Supreme Court said, on this point (189 Cal. 228, 236 [207 Pac. 903, 906]) : "That under a writ of review, the evidence of facts upon which the lower court or tribunal depended for its jurisdiction may be considered, and its judgment set aside if jurisdiction is without support in the evidence, is beyond dispute." In the same case the court quoted with approval the following passage from *McClatchy* v. *Superior Court, supra*: "While the writ of *certiorari* is not a writ of error, 'it is nevertheless', as suggested in *Schwartz* v. *Superior Court*, 111 Cal. 106, 112 [43 Pac. 580], 'a means by which the power of the court in the premises can be inquired into; and for this purpose the review extends not only to the whole of the record of the court below, but even to the evidence itself, when necessary to determine the jurisdictional fact.' " ' " "

In examining the evidence on which the court below acted, (without considering testimony taken here) we find that

such evidence consists entirely of the documentary record in the case of *Union Trust Company of San Diego, etc.* v. *Bennett, et al.* This record shows the judgments obtained in the Justices' Court and Superior Court, the pleadings and other formal matters, and the two assignments. The assignment to Ethel Eaton recites that it was made "FOR VALUABLE CONSIDERATION and pursuant to an order made in the Superior Court of the State of California, in and for the County of San Diego, in the proceedings entitled *In the Matter of the Estate of William B. Gross,* deceased, No. 20439." The assignment to petitioner recites, "For value received, the receipt whereof is hereby acknowledged, the undersigned hereby assigns and transfers to W. C. Wilde plaintiff's cause of action and judgment in the above entitled action. . . ."

While the assignment to petitioner was made after his disbarment, and to that extent comes within the prohibitive provisions of section 6130 of the Business and Professions Code, there is nothing in that record to indicate that this assignment was made "solely for the purpose of collection" which is an element that must be proved before a violation of that section can be established.

As we have seen, neither the trial court nor this court can indulge in any presumptions against one charged with contempt. It cannot be presumed, without supporting evidence, that the assignment was made "solely for the purpose of collection." The assignment was in writing and recited the fact of consideration. There is a presumption "that there was a good and sufficient consideration for a written contract" (Subd. 39, § 1963, Code Civ Proc.) and also, what has been characterized as one of the strongest presumptions, "that a person is innocent of crime or wrong" (Subd. 1, § 1963, Code Civ. Proc.). These presumptions in favor of petitioner were with him in the trial court and should have been invoked in his favor. Certainly in the face of these presumptions and in the total absence of any evidence contradicting them it cannot be said that there was any showing that the assignment to petitioner was made "solely for the purpose of collection." In the absence of such showing the evidence in the court below (without reference to the evidence taken in this court) failed to show the fact of contempt and the order adjudging defendant guilty of contempt must be annulled.

The State Bar of California has appeared as *amicus curiae* and its attorney has filed an able brief in support of the judgment. It states its principal object in appearing is to obtain a ruling on what showing must be made to establish the fact that an attorney has prosecuted a claim assigned to him "solely for the purpose of collection" so as to prevent former attorneys from evading the results of their disbarments and actually engaging in the practice of law through the means of assignments of causes of actions to them.

While this purpose is praiseworthy the determination of that question should wait a proper case in which it is directly involved. It cannot be decided here where there is an entire lack of any evidence in the record to be reviewed even suggesting that the assignment to plaintiff was made solely for collection and strong presumptions are against such a conclusion. However, it might not be out of place to say that we have no sympathy with a disbarred attorney who attempts to evade the consequences of his disbarment by purchasing claims after he is disbarred and prosecuting them in court in his own name and *propria persona.* Should such a case arise it might be held that the courts have an inherent power regardless of statute, to prevent such a flagrant effort to evade the effect of an order of disbarment.

The order adjudging petitioner guilty of contempt of court is annulled.

Barnard, P. J., and Griffin, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 27, 1942. Gibson, C. J., and Traynor, J., voted for a hearing.