[Civ. No. 5816.    Fourth Dist.    Nov. 21, 1957.]

JOHN F. O'LAUGHLIN, Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY et al., Respondents.

Barton C. Sheela, Jr., for Petitioner.

James Don Keller, District Attorney, and Claude B. Brown, Deputy District Attorney, for Respondents.

MUSSELL, J.—In this proceeding in certiorari, petitioner, an attorney, seeks to annul an order of the Superior Court of San Diego County adjudging him in contempt of court, ordering that he pay a fine and that he be imprisoned for a period of three days, two of which were suspended.

The alleged contempt occurred on January 8, 1957, before the court and in the presence of the jury in the trial of an action entitled "The People of the State of California, Plaintiff, vs. Lucille M. Whisenand and Beatrice Victoria Winn, Defendants" and during the cross-examination of George D. Latham, who was a witness for the prosecution. This witness had admitted that he had been previously convicted of the crime of murder in the state of North Dakota. The defendants, Whisenand and Winn, were being tried on charges of kidnapping, attempt to commit murder, robbery, burglary, and conspiracy to commit the crime of kidnapping. The testimony of Mrs. Ruth Latham, wife of George D. Latham, was to the effect that she had been abducted from her home in San Diego, carried about San Diego in a panel delivery truck, concealed for a time at the home of Mrs. Winn, then transported in the trunk of an automobile to a point in Imperial County, where she was stripped of all her clothing and buried alive under rocks by the defendants; that she freed herself from the bonds on her wrists and feet, pushed the rocks aside, and walked to the highway, where she was discovered by a passing motorist.

The order adjudging petitioner guilty of contempt is, in part, as follows:

"Upon his further cross-examination on the above date (January 8, 1957) the witness (George D. Latham) was asked by John F. O'Laughlin, an attorney for Lucille M. Whisenand, the following question: 'Well, Sir, isn't the story of your wife, the story that your wife related here, about being placed in the ditch and about walking to her rescue and telling who had

harmed her, isn't that a carbon copy of the North Dakota murder?'

"By Mr. Low (Deputy District Attorney) : 'Just a minute. Objected to as immaterial and highly improper. Counsel knows it.'

"The Court: 'Sustain the objection.'

"Mr. O'Laughlin: 'Maybe Mr. Latham knows better, too.'

"Whereupon a demand for an offer of proof was made by Mr. Low, and out of hearing of the jury the following offer of proof was made:

"Mr. O'Laughlin: 'Your Honor, I have a newspaper article that was written back in North Dakota and it says this:

" 'Kidnap trial witness tells of North Dakota murder conviction 36 years ago.

" 'It says, "Old newspaper files report Latham was convicted at New Rockford as an accomplice in the fatal shooting of Angelo Meggo, described as an Italian farm laborer. The old newspapers quote J. A. Manley, then State's Attorney of Eddy County, to the effect that Latham and Henry Epstein, alias Henry Jackson, made a statement concerning the shooting of Meggo in a robbery aboard a freight train that was traveling across Eddy County. Meggo, shot twice in the abdomen, and thrown from the train southeast of New Rockford, dragged himself to a store in the village of Dundas. He died shortly afterward. Authorities said in his statement Latham told them Epstein did the shooting but that he admitted he was present. Epstein received a fifteen-year sentence to the penitentiary." ' "

The reporter's transcript, however, shows that after the foregoing question was asked and the objection thereto sustained, Mr. Low, counsel for the People, said "If the court please, we would like to ask counsel to approach the bench and make an offer of proof on that. There is no basis for it." All counsel then approached the bench and out of the presence of the jury, petitioner said, "O.K. What do you want to know?", and the court replied, "Make your offer of proof." Following this order of the court, petitioner quoted from a newspaper article as set forth in the quoted portion of the contempt order. Following these proceedings, Mr. Low stated that he would appreciate some sort of statement by the court to the jury, and the judge replied, "I am going to," after which, in the presence of the jury, he made the following comments:

418

"THE COURT: Mr. O'Laughlin, you asked Mr. Latham about the similarity between the incident in North Dakota and here. You have an article from which you read. That incident has absolutely no similarity of any kind or character with the present offense. You knew it at the time you asked the question and you only asked the question for the purpose of leaving a bad inference. At this time I charge you with misconduct. I don't want it to happen again, Mr. O'Laughlin. If it does, I am going to do something to you.

"MR. O'LAUGHLIN: Your Honor, I showed my good faith on it.

"THE COURT: There was no good faith shown whatsoever. You have the article there and it has absolutely no resemblance to this incident at all and you knew it, and the next time, Mr. O'Laughlin, a thing like that happens, I am going to put you out that left door over there. (Door leading to jail.) That is what is going to happen to you. Proceed. Proceed."

A recess was then ordered, after which, in chambers, the court informed the petitioner, *inter alia*, that the question asked by petitioner was unethical and uncalled for and that if it were not for the fact that petitioner had not been out in practice for a very long time he would cite him for contempt at that time, but that he was going to continue the matter until the conclusion of the trial and that at that time, if he had not changed his mind, he was going to cite petitioner for contempt. Following further remarks by the court and counsel, the court stated that if he held petitioner in contempt of court, he did not know what he was going to do and that "If I do, maybe I better make the sentence such that he will be forced to take out a writ of certiorari and go see whether I am justified." The trial was then resumed and examination of the witness, Latham, was concluded without further reference to questions asked by the petitioner.

On January 18, 1957, proceedings were had in which the court related the circumstances surrounding the asking of the question of the witness, Latham, by petitioner and stated to petitioner, among other things, that he thought he was in contempt of court; that he could have found petitioner in contempt of court at the time (January 8, 1957) and sentenced him but that he wanted petitioner to have a right to be heard. The court then stated he would furnish petitioner with a transcript of the proceedings and his remarks so that petitioner would be fully apprised of the charge made against him and that petitioner could appear in person or by counsel

and answer it. After further remarks by the court and counsel, the matter was continued from time to time until June 13, 1957, when the court found that petitioner had asked the question of the witness, George D. Latham, without any basis in fact, and was not acting in good faith; that the question was asked with intent to mislead the jury, to prejudice the jury against the case of the People; that the question was improper and was asked with the intent to thwart and obstruct justice and that the two crimes bore no similarity. The court then found petitioner guilty of contempt and imposed a sentence of fine and imprisonment.

The question of whether the order herein adjudging petitioner in contempt should be annulled must be determined in the light of certain well established rules governing contempt of court. In *Bennett* v. *Superior Court*, 73 Cal.App.2d 203, 210-211 [166 P.2d 318], it was held that contempt of court is a specific criminal offense; that the proceeding is of such a distinctly criminal nature that a mere preponderance of the evidence is insufficient; that the defendant cannot be compelled to be sworn as a witness; that in reviewing the proceedings, the charge, the evidence, the findings and judgment are all to be strictly construed in favor of the accused, and no intendments or presumptions can be indulged in aid of their sufficiency. And on page 218 the court said:

"We know of no rule of law permitting a court to punish an attorney because he is honestly mistaken in his interpretation of the law when he presents his mistaken views to the court in a proper and respectful manner. As is said in *Ex parte Lake, supra*: 'It never has been held that in the trial of an issuable fact an attorney is guilty of contempt in merely offering insufficient, or even incompetent, evidence in an effort to prove that fact.' "

In *Wilde* v. *Superior Court*, 53 Cal.App.2d 168, 177-178 [127 P.2d 560], it was held:

"In cases of contempt committed in the presence of the court, the order adjudging the contempt must also recite facts which actually constitute contempt. It is also true that as the proceedings are of a criminal nature no presumptions may be indulged in favor of the judgment. These rules were clearly stated in *In re Lake, supra*, as follows:

" 'The reason for this rule is clearly stated in the Hotaling case, from which we quote (191 Cal. 501 [29 A.L.R. 127, 217 P. 74]): "Contempt of court is a specific criminal offense.

[Citing cases.] A contempt proceeding is not a civil action either at law or in equity (herein disagreeing with *Ex parte Selowsky*, 189 Cal. 331 [208 P. 99, 100]) . . . but is a separate proceeding of a criminal nature and summary character [Citations.] in which the court exercises but a limited jurisdiction. . . . The proceeding is of such a distinctly criminal nature that a mere preponderance of evidence is insufficient." ' "

In *Gallagher* v. *Municipal Court*, 31 Cal.2d 784, 795-796 [192 P.2d 905], it is said that:

"In a summary contempt proceeding the judge who metes out the punishment is usually the injured party and the prosecutor as well. Since such a situation invites caprice, appellate courts almost without exception require that the order adjudging a person in direct contempt of court recite in detail the facts constituting the alleged transgression rather than the bare conclusions of the trial judge. . . .

"An advocate ought to be allowed freedom and latitude both in speech and in the conduct of his client's case. . . . The public interest in an independent bar would be subverted if judges were allowed to punish attorneys summarily for contempt on purely subjective reactions to their conduct or statements."

In *Platnauer* v. *Superior Court*, 32 Cal.App. 463, 474-475 [163 P. 237], quoted by the court in the Gallagher case, *supra*, it was held:

"A lawyer, when engaged in the trial of a case, is not only vested with the right, but, under his oath as such officer of the court, is charged with the duty of safeguarding the interests of his client in the trial of an issue involving such interests. For this purpose, in a trial, it is his sworn duty. when the cause requires it, to offer testimony in behalf of his client or in support of his case in accordance with his theory of the case, to object to testimony offered by his adversary, to interrogate witnesses, and to present and argue to the court his objections or points touching the legal propriety or impropriety of the testimony or of particular questions propounded to the witnesses. If, in discharging his duty, he happens to be persistent or vehement or both in the presentation of his points, he is still, nevertheless, within his legitimate rights as an attorney, so long as his language is not offensive or in contravention of the common rules of decorum and propriety. As well may be expected in forensic polemics, he cannot always be right, and may wholly be wrong in his

position upon the legal question under argument, and to the mind of the court so plainly wrong that the latter may conceive that it requires no enlightenment from the argument of counsel. But, whether right or wrong, he has the right to an opportunity to present his theory of the case on any occasion where the exigency of the pending point in his judgment requires or justifies it."

In *Chula* v. *Superior Court*, 109 Cal.App.2d 24, 39-40 [240 P.2d 398], this court held:

"An attorney has the duty to protect the interests of his client. He has a right to propound a legitimate argument and to protest an erroneous ruling, and there is no rule permitting a court to punish an attorney because he is honestly mistaken in his interpretation of the law when he presents his mistaken views to the court in a proper and respectful manner.

"In *Gallagher* v. *Municipal Court*, 31 Cal.2d 784 [192 P.2d 905], the court cited with approval *Platnauer* v. *Superior Court, supra,* and stated, at page 788:

" 'But certainly a mere mistaken act by counsel cannot render him in contempt of court. Even if a legal proposition is untenable, counsel may properly urge it in good faith; he may do so even though he may not expect to be successful, provided of course, that he does not resort to deceit or to wilful obstruction of the orderly processes.' "

█ An examination of the order of contempt herein, considered in the light of the foregoing authorities, impels us to conclude that the order must be annulled. It is apparent from the contempt order that it is based on the finding that the question asked George Latham by petitioner constituted contempt of court. The question "Well, Sir, isn't the story of your wife, the story that your wife related here, about being placed in the ditch and about walking to her rescue and telling who had harmed her, isn't that a carbon copy of the North Dakota murder?" apparently called for the opinion of the witness, Latham, as to the truthfulness of his wife's testimony and was clearly objectionable. However, an objection thereto was sustained by the court and there was no attempt on the part of the petitioner to pursue the inquiry further after the objection was sustained. The record shows that petitioner was then requested by counsel for the People (out of the presence of the jury) to make an offer of proof and after having been ordered by the court so to do, petitioner quoted from a newspaper article. However, no offer of

proof was made before the jury and when the trial resumed, the court stated to the jury that petitioner had read from a newspaper article and made the remarks above quoted. These remarks indicated that the court then considered the matter terminated for he did not then find the petitioner guilty of contempt or state that he would do so and the record shows that petitioner was not found guilty of contempt until June 13, 1957, several months thereafter.

While in the contempt order the court found that the question was asked with intent to mislead and prejudice the jury against the case of the People, there are no findings of fact stated in the order sufficient to show that the question was asked with the intent stated by the court. The record also shows that the court criticized the petitioner for the manner in which he conducted the trial and that the court was influenced thereby to find him guilty of contempt therefor. ▋ However, the order adjudging petitioner guilty of contempt must recite facts which actually constituted contempt (*Wilde* v. *Superior Court, supra*), and we are not here concerned with matters which do not appear therein. ▋▋ There are no presumptions in favor of the order and the conclusions of the trial court cannot cure the failure to recite in detail sufficient facts in the order to constitute contempt of court. We conclude that, under the circumstances shown by the record and the rules announced in the decisions cited herein, the contempt order must be set aside.

The order adjudging petitioner guilty of contempt of court and imposing sentence is annulled.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied December 11, 1957, and respondents' petition for a hearing by the Supreme Court was denied January 15, 1958.